WILLIAM E. WEBER, as Guardian ad Litem for BABY JANE DOE, Respondent, v STONY BROOK HOSPITAL et al., Appellants.

Second Department, October 21, 1983

APPEARANCES OF COUNSEL

*Paul Gianelli* (*Charles Newell* of counsel), for Mr. & Mrs. "A", appellants.

*Robert Abrams, Attorney-General* (*David Smith* of counsel), for Stony Brook Hospital and another, appellants.

*William E. Weber,* Guardian ad Litem.

OPINION OF THE COURT

*Per Curiam.*

The issue is whether the appellant parents have been neglectful of their newborn infant in failing to provide her with "adequate * * * medical * * * care" (Family Ct Act, § 1012, subd [f], par [i], cl [A]). Based upon the record before us, we answer in the negative.

Baby Jane Doe was born on October 11, 1983 with multiple serious disorders, including myelomeningocele (commonly known as spina bifida), a failure of the normal closure of the bones and the coverings of the spinal cord, microcephaly, a small head circumference, bespeaking increased pressure in the cranial cavity, and hydrocephalus, a condition in which fluid fails to drain from the cranial areas. The infant was transferred from the hospital where she was born to appellant Stony Brook Hospital with the expectation of having surgery performed to correct the spina bifida and hydrocephalic condition. However, after lengthy consultations with neurological experts, nurses, religious counselors and a social worker, the parents declined to consent to the proposed surgery and elected to adopt a conservative course of treatment. This course of treatment became the subject of a challenge in the Supreme Court, Suffolk County, and a guardian ad litem was appointed. After a hearing, Special Term, by the judgment under review, *inter alia,* found that the infant was "in need of immediate surgical procedures to preserve her life" and authorized the guardian ad litem to consent, on the infant's behalf, to the surgical procedures. We reverse.

Initially, we observe that this proceeding was properly entertained by Special Term. Under the *parens patriae* doctrine, the State may constitutionally act as the " 'general guardian of all infants' " (*Hawaii v Standard Oil Co.,* 405 US 251, 257) and may direct medical treatment of a minor, in appropriate circumstances, over parental objection (see *Prince v Massachusetts,* 321 US 158, 166-167; *Matter of Storar,* 52 NY2d 363, 377; *Matter of Bennett v Jeffreys,* 40 NY2d 543, 546). Quite aside from any statutory authority (see Family Ct Act, § 1013; *Matter of Sampson,* 29 NY2d 900), a court of equity "has both the power and responsibility to care for and protect all those persons who, by virtue of some legal disability, are unable to protect themselves" (*Custody of Minor,* 375 Mass 733, 744; see, also, *Strunk v Strunk,* 445 SW2d 145, 147 [Ky]; Order for Medical Treatment of Child, Ann., 97 ALR3d 421; cf. *Matter of Willoughby,* 11 Paige Ch 257) and may, "upon its own initiative whenever it deems it necessary" appoint a guardian to do so (*Matter of Kummer,* 93 AD2d 135, 168).

Turning to the merits of this matter, careful examination of the testimony at Special Term reveals that there is no support for its finding that the infant is being deprived of adequate medical care or that her life is in "imminent danger" without performance of the proposed surgery. Doctor Newman, a pediatric neurologist, and Doctor Butler, a neurosurgeon, were the only physicians to testify. Both agree — and the medical records in evidence support their conclusion — that the parents' choice of a course of conservative treatment, instead of surgery, was well within accepted medical standards and that there was no medical reason to disturb the parents' decision. Considerations of the risks of the surgical procedure, and its impact upon the patient's over-all medical condition, led both doctors to the conclusion that the conservative course of treatment presently being given the infant was medically appropriate.

The record confirms that the failure to perform the surgery will not place the infant in imminent danger of death, although surgery might significantly reduce the risk of infection. On the other hand, successful results could also be achieved with antibiotic therapy. Further, while the mortality rate is higher where conservative medical treatment is used, in this particular case the surgical procedures also involved a great risk of depriving the infant of what little function remains in her legs, and would also result in recurring urinary tract and possibly kidney infections, skin infections and edemas of the limbs.

It is manifest, therefore, that this is not a case where an infant is being deprived of medical treatment to achieve a quick and supposedly merciful death. Rather, it is a situation where the parents have chosen one course of appropriate medical treatment over another. These concededly concerned and loving parents have made an informed, intelligent, and reasonable determination based upon and supported by responsible medical authority. On this record, and in light of all the surrounding circumstances, we find the parents' determination to be in the best interest of the infant. Accordingly, there is no basis for judicial intervention (*Matter of Hofbauer,* 47 NY2d 648).

Titone, J. P., Mangano, Thompson, Bracken and Brown, JJ., concur.

Judgment reversed, on the law and the facts, without costs or disbursements, proceeding dismissed and the order appointing the guardian ad litem vacated.

Motion by the attorney for Mr. & Mrs. "A" for a stay of this court's order if it should affirm the order of Special Term, denied as academic.