Evelyn BEASLEY, et al., Plaintiffs,

v.

James G. HARRIS, Jr., et al., Defendants/Third–Party Plaintiffs,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Third–Party Defendant.

Civ. No. H–86–619 (PCD).

United States District Court, D. Connecticut.

Oct. 14, 1987.

Judith Hoberman, New Haven Legal Assistance, New Haven, Conn., Steven Epstein, Conn. Legal Services, Meriden, Conn., for plaintiffs.

Joseph I. Lieberman, Atty. Gen., Joseph DuMond, Jr., Asst. Atty. Gen., Hartford, Conn., for defendants & third-party plaintiffs.

Stanley Twardy, U.S. Atty., Philip Jones, Asst. U.S. Atty., Hartford, Conn., for third-party defendant.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

### Facts and Procedural History

Plaintiffs bring this action on behalf of themselves and their minor children as recipients of Aid to Families With Dependent Children ("AFDC") benefits through the Connecticut Department of Income Mainte-

nance ("DIM"). Defendant Heintz is Commissioner of DIM. Defendant Harris is Commissioner of the State Department of Human Resources ("DHR"). Defendant Salius is the Director of the Family Division of the Judicial Department of the State of Connecticut ("FD"). Defendant Freedman is Commissioner of the State Department of Administrative Services ("DAS").

Plaintiffs seek injunctive and declaratory relief from defendants' allegedly illegal practices in conjunction with the child support "pass-through" provisions of the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98–369, 98 Stat. 494, 42 U.S.C. § 657(b)(1), *et seq.*, claiming:

(1) Defendants violated the due process guarantees of the Constitution, 42 U.S.C. §§ 602, 654(13), 45 C.F.R. §§ 206.-10(a)(s)(i), 232.20(d) and 302.51(b)(1) by failing to promptly forward child support payments.

(2) Defendants Harris and Heintz have violated 42 U.S.C. §§ 602(a)(8)(A), 675(b)(1) and 45 C.F.R. §§ 233.20(d) and 302.51(b)(1) by improperly determining when pass-through payments should be made.

(3) Defendants Harris and Salius have violated 42 U.S.C. §§ 654(11), 666(a)(1) and 666(b)(5) and 45 C.F.R. §§ 303(d)(1)(ii) and 303.100(e)(2) by failing to comply with and enforce the wage-withholding provisions of Title IV–D of the Social Security Act.

(4) Defendants Harris and Heintz have violated 42 U.S.C. § 602(a)(4) and 45 C.F.R. § 205.10(a)(5) and the due process guarantees of the Constitution by not providing plaintiffs with notice as to the amounts of child support received on their behalf, the date of such receipt, whether a pass-through payment will be made, and the procedures for requesting a hearing to correct any claimed errors.

On December 4, 1986, defendants/third-party plaintiffs impleaded the Secretary of the Department of Health and Human Services ("HHS"), Otis R. Bowen, pursuant to Fed.R.Civ.P. 14 to require the Secretary to interpret several of his regulations.

Currently pending are:

1. Defendants/third-party plaintiffs' motion to deny class certification and plaintiffs' cross-motion to approve class certification.
2. Defendants/third-party plaintiffs' motion to dismiss the complaint.
3. Third-party defendant's motion to dismiss or, in the alternative, for summary judgment.

*Discussion*

*Statutory History*

The AFDC program was enacted (1) to encourage the care of dependent children in their own home or that of relatives; and (2) to ensure that parents or guardians are financially able to provide for these children. 42 U.S.C. § 601. The program is a federal-state cooperative effort. *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968).

Title IV–A of AFDC, §§ 601–615, governs the administration of the program. State participation is optional, but states which choose to participate must design a program which meets federal statutory and regulatory requirements. § 602(a) and (b). The aims of Title IV–A have been effectuated through monthly assistance payments. Title IV–A, however, as originally enacted, contained no provisions for enforcement of child support nor with reimbursement to the state and federal government through the collection of such child support. Congress made several attempts to remedy this defect, *see* § 321(b) of Chapter 809, Pub.L. No. 734, 64 Stat. § 549–550 (1950); §§ 201(a)(1) and 211(a) of Pub.L. No. 90–248, 81 Stat. §§ 878–879, 896–897, *codified at* 42 U.S.C. § 602(a)(17), (18), (21) and (22) (1968), none of which solved the problem. Title IV–D, 42 U.S.C. §§ 651–67, was then enacted and mandated paternity and child support enforcement services be implemented as a Title IV–A plan requirement. 42 U.S.C. § 602(a)(27). Title IV–D state plans must meet specific federal criteria.

42 U.S.C. § 654.[1] Under this combined program, each applicant must assign to the state his or her right to child support and must cooperate in establishing paternity of illegitimate children for whom aid is claimed and in obtaining support payments. *Id.* at § 602(a)(26). Title IV–D also requires states to form cooperate agreements with the appropriate courts and law enforcement officials to assist in obtaining child support and paternity orders. *Id.* at § 654(7).[2]

Connecticut has adopted a multi-agency approach to implement its Title IV–A and IV–D plans. Title IV–A is administered by DIM. It receives and processes AFDC applications. An applicant for aid must assign his or her right to child support to DIM and assist in enforcing support obligations against the absent parent. Conn. Gen.Stat. § 17–82b. Upon approval, the applicant receives monthly payments fixed by regulations. Conn.Gen.Stat. § 17–82d. Title IV–D is administered by DHR through its Bureau of Child Support ("BCS"), which must "coordinate, plan and publish the state child support enforcement plan for the implementation of Title IV–D." § 17–31i(a). Through agreements with other officials, BCS has enlisted FD to ensure that parents comply with child support court orders. One means by which FD seeks compliance is through wage executions. DHR has also enlisted the accounting services of DAS to ensure that support-obligated parents are properly billed and their payments properly recorded.

Plaintiffs' claims grow out of the 1984 amendments to the AFDC program, *see* DEFRA, 42 U.S.C. § 657(b)(1), amending § 457(b)(1) of the Social Security Act, which require:

the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the [AFDC] family without affecting its eligibility for assistance or decreasing

any amount otherwise payable as assistance to such family during such month. The $50 pass-through payment is not included in the calculations by which an AFDC applicant's eligibility or a recipient's monthly support obligation is determined. Thus, a recipient receives $50 to which the state might otherwise have been entitled as reimbursement for support payments.

As factual support, plaintiffs represent:

Beasley alleges that her former husband has been paying child support payments of $200 through the Sacramento (California) County Child Support Unit on behalf of her four children. These payments are forwarded to the State of Connecticut monthly. In January 1985, Beasley received a pass-through payment representing her husband's October 1984 support payment. From January 1985 through September 1985, and from November 1985 through April 1986, Beasley received monthly pass-through support payments for child support paid by her former husband three months earlier. In October 1985 and May 1986, Beasley did not receive pass-through payments, despite her belief that her husband made payments which would have entitled her thereto. She was not told that such payments would not be made, why they would not be made, nor was she afforded a hearing to contest the non-payment. Complaint ¶¶ 38–43.

DeJesus is also an AFDC recipient. The father of her children has allegedly been paying child support of $40 per week through a wage garnishment. Plaintiff alleges that, despite DHR's and FD's legal ability to enforce regular collection of such garnished wages, and despite the fact that the employer regularly withholds the garnished wages, support payments have only been collected for August 1985, December 1984, and May 1986. She claims to have received pass-through payments only for the months of November 1985 and March 1986. She also complains that she was not given notice that she would not receive

---

1. Title IV–D paternity and child support services are also available to non-AFDC families. 42 U.S.C. § 654(4) and (6).

2. Congress reemphasized its interest in encouraging child support enforcement remedies by passing the Child Support Enforcement Amendments of 1984, Pub.L. No. 98–378, §§ 1–23, 98 Stat. 1305, *codified at* 42 U.S.C. § 651 (1984).

pass-through payments and was not given a hearing to contest the non-payment. Complaint ¶¶ 44–48.

The father of Kennedy's children pays child support at the rate of $5.00 per week through garnishment of his wages. The garnished wages are forwarded to the FD and thereafter to DAS. She has never received a pass-through payment. She, too, challenges the lack of notice and as to this non-payment without a response. Complaint ¶¶ 49–52.

Sheridan's former husband pays $60 per week through a wage garnishment. She, too, has never received a pass-through payment. Complaint ¶¶ 53–56.

*Defendants' Motion to Dismiss* [3]

Defendants have moved to dismiss all six counts of the complaint.

### A. *Counts One and Two*

In Counts One and Two, plaintiffs claim that "[d]efendants' policy and practice of not forwarding child support payments to AFDC families until three months after receipt violates the 'reasonable promptness' requirement of 42 U.S.C. § 602(a)(1)(A), 42 U.S.C. § 657(b)(1), and the regulations promulgated pursuant to these statutes, 45 C.F.R. § 206.10(a)(5)(i), 232.20(d) and 302.-51(b)(1), as amended ... [and] deprives Plaintiffs of their property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution." Complaint at ¶¶ 58 and 60.

In response to § 657(b)(1), the Secretary has stated that: "The State plan must provide that the IV–A agency, on behalf of the IV–D agency, will promptly pay to the family the sum disregarded under § 305.-51(b)(1) [sic: § 302.51(b)(1) ]." 45 C.F.R. § 232.20(d) (1986). The Secretary has not defined the word "promptly."

The state defendants, citing *Liggins v. Roark*, Civil No. W85–0019(B) (S.D. Miss. Mar. 19, 1986) (Memorandum Opinion), argue that "prompt" should be defined as that which is administratively feasible. In *Liggins*, the court held a two-month delay in making pass-through payments to be within the timeliness requirements of the statute. In so holding, the court relied primarily on the HHS Regional Director's interpretation that "prompt" was defined as that which was administratively feasible. In this case, the Secretary has similarly endorsed the concept of administrative feasibility.[4]

Plaintiffs raise two objections. First, they argue that defendants' argument is not proper on a motion to dismiss, inasmuch as they have met their pleading burden by alleging that defendants' three-month delay in forwarding pass-through payments is not prompt. Second, they argue that the statutory provisions support their argument.

■ Even assuming that the court was willing to endorse the "administratively feasible" definition of the term "prompt," the matter could not be resolved on a motion to dismiss. What is administratively

---

3. Third-party defendant Bowen has moved to dismiss the third-party complaint on the ground that there is no justiciable controversy. In effect, all that has been requested by defendants/third-party plaintiffs is that Bowen interpret his regulations. There is no authority for such a request. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (Justiciability under Article III is "not satisfied merely because a party requests a court of the United States to declare its legal rights."). Perhaps recognizing this fact, defendants/third-party plaintiffs have not responded to Bowen's motion to dismiss. Local Rule 9(a). Accordingly, absent opposition, and for the reasons stated more fully in Bowen's memorandum, the motion is granted. However, since third-party defendant's regulations are partially at issue here, his arguments relative to such issues shall be considered as those of an *amicus curiae.*

4. The Secretary has indicated that he is currently drafting final regulations to implement DEFRA which may resolve some of the ambiguity on this issue. Secretary's Memorandum at 13. The Secretary has not supplemented his brief to note that those regulations have now been finalized, nor has the court found them in its research. It would not be proper to stay these proceedings pending the issuance of said regulations. Regulations issued prior to resolution of this matter will be given the deference to which they are entitled. *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981).

feasible would necessarily turn on the circumstances of the particular case. For instance, in *Liggins* a delay of two months might have been justified because of a large AFDC client base. That may not be the situation in Connecticut. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Furthermore, there is at least potential merit to plaintiffs' case. Section 232.20(d) of 45 C.F.R. requires that the pass-through payments be forwarded "promptly." Section 602(a)(10)(A),[5] 42 U.S.C., and § 206.-10(a)(5)(i),[6] 45 C.F.R., more generally state that Title IV–A requires that financial assistance be furnished with "reasonable promptness," § 602(a)(10)(A), and/or "without any delay attributable to the agency's administrative process." § 206.10(a)(5)(i). "Administrative feasibility" is not a standard found in either the statute or the regulations. A standard may not take into account bureaucratic delay. 45 C.F.R. § 206.10(a)(5)(i). The Secretary argues, however, that the standard, as interpreted by regulation, should not be applied to § 657(b)(1) because pass-through payments are not Title IV–A financial assistance payments. He argues that it is an incentive payment which should be considered separately from aid payments. The Secretary's interpretation, however, is inconsistent with the statute, his own regulations, and the purpose behind the pass-through payments. Section 232.10(d) specifically provides that the Title IV–A agency will *promptly* pay the pass-through payment.

The specific reference to the Title IV–A agency and the use of the same standard for determining timeliness as binds the Title IV–A agency in providing traditional Title IV–A payments, i.e., *prompt, see* §§ 602(a)(10)(A); 45 C.F.R. § 206.10(a)(5)(i), only makes sense if the two payments were intended to be forwarded in the same timely manner. Secondly, AFDC "means money payments with respect to a dependent child or dependent children." 42 U.S.C. § 606(b). DEFRA, although concededly enacted to encourage parents to pay their child support, helps ensure that the twin goals of the AFDC program are met. To argue, as does the Secretary, that Title IV–A and Title IV–D should be viewed separately ignores the correlated intent of the legislation.[7] The statutes, regulations and underlying purpose of the AFDC program support a requirement of promptness as it is applied in Title IV–A, *see, e.g., Mandley v. Quern*, 635 F.2d 659 (7th Cir. 1980); *Like v. Carter*, 448 F.2d 798 (8th Cir.1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972), *on remand*, 353 F.Supp. 405 (E.D.Mo.1973); *Morgan v. Maher*, 449 F.Supp. 229 (D.Conn.), *aff'd*, 591 F.2d 1331 (2d Cir. 1978), to Title IV–D pass-through payments.

█] In the alternative, defendants Harris, Salius and Freedman have moved that they be dismissed because only Heintz, as Commissioner of DIM, can be held liable for the delays. Defendants admit that Connecticut has "adopted a multi-agency approach for implementing the federally mandated Title IV–D state plan." Defendants' Memorandum at 5. They have admit-

5. Under § 602(a)(10)(A), a state plan for aid and services to needy families with children must: provide that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and that aid to families with dependent children shall, subject to paragraphs (25) and (26), be furnished with reasonable promptness to all eligible individuals; ....

6. Section 206.10(a)(5)(i) provides:
   Financial assistance and medical care and services included in the plan shall be furnished promptly to eligible individuals without any delay attributable to the agency's administra-

tive process, and shall be continued regularly to all eligible individuals until they are found to be ineligible.

7. Curiously, the Secretary's argument that the pass-through payment should be exclusively reviewed under Title IV–D and not made subject to the Title IV–A interpretation of "promptness" contradicts defendants' arguments that only the Title IV–A officers should be held liable on this claim. How can § 657(b)(1) be interpreted under Title IV–D yet only Title IV–A officials be held liable for violating the provision?

ted that DHR administers the child support program, *id.* at 6, that FD assists DHR in this regard, *id.* at 7, and that DAS is responsible for the accounting associated with the state's Title IV–D plan, *id.* As such, the argument that only Heintz can be held liable for the alleged delays in the pass-through payments is without merit. Each defendant plays a role in the AFDC program; each defendant must bear responsibility for that role.

### B. *Count Three*

In Count Three, plaintiffs claim that "Harris' and Heintz' policy of making child support pass-through payments only when the payments are received by the Bureau of Collections in the same month in which they are due violates 42 U.S.C. §§ 602(a)(8)(A) and 657(b), and 45 C.F.R. §§ 233.20(d) and 302.51(b)(1)." [8]

Section 657(b)(1) provides that "the first $50 of such amounts as are *collected* periodically which represent monthly support payments shall be paid to the [AFDC] family." (Emphasis added). Defendants argue that the term "collected" should be determined as the time when current support obligations are received by DAS. The Secretary's regulation states that the "date of collection shall be the date on which the payment is received by the IV–D agency or the legal entity of the state ... actually making the collection on behalf of the IV–D agency." 42 C.F.R. § 302.51(a). Pass-through payments are paid for "any amount that is collected in a month which represents payment on the required support obligation for that month." *Id.* at § 302.51(b)(1). Pass-through payments are not made for months when child support is not collected. *Id.* Defendants also argue that such a construction comports with the purpose of DEFRA, *viz,* providing an incentive to the obligor to make timely payments and providing an incentive to the AFDC recipient to pressure an obligor to make timely payments. The Secretary endorses this analysis and particularly reiterates

that § 657(b)(1) applies only to payments of the *current* month's child support obligation.

Plaintiffs argue that defendants' arguments are not properly advanced on a motion to dismiss and that their interpretation is supported by the statutes, regulations, and legislative policy underlying the AFDC program.

There is no dispute but that the obligation to make the pass-through payment is not created until the monthly support payment is *collected.* The statute, §§ 657(b)(1) and (b)(2), and the regulation, 45 C.F.R. § 302.51(b)(1), expressly so couch the obligation. The dispute is over the definition of "collected." Defendants maintain that a payment is "collected" on the date on which DAS receives the payment. Plaintiffs maintain that the date of collection of a support payment made within the state occurs on the date on which the payment is first collected by any of DHR's collecting agencies and of a support payment made outside the state on the date on which that state first receives the payment.

With respect to in-state payments, defendants' argument is without merit. The regulation clearly provides that "[t]he date of collection shall be the date on which the payment is received by the IV–D agency *or the legal entity of the state ... making the collection* on behalf of the IV–D agency." 42 C.F.R. § 302.51(a) (emphasis added). A support payment made within a given month, but not forwarded to DAS in the same month because of bureaucratic or postal delays is certainly no basis to penalize the AFDC family. "No rationale purpose is served by denying child support to a needy family ... because the state itself has not promptly entered the money into its books." *Wilcox v. Petit,* 649 F.Supp. 685, 687 (D.Me.1986), *reaff'd on reconsideration,* 653 F.Supp. 708 (D.Me.1987).

---

**8.** Plaintiffs argue that in relation to this claim the Secretary should better define his interpretation of the statutes. Although the substantive arguments of the parties will be considered, the

court notes that plaintiffs have not amended their complaint to seek any relief against the Secretary.

As to support obligations collected by another state,[9] plaintiffs argue that the collecting state should be deemed the legal entity responsible for collecting the money for DHR. *See* 45 C.F.R. § 302.51(a). That would treat receipt of a payment by the receiving state as collection by Connecticut. "For purposes of interstate collections, the date of collection shall be the date on which the payment is received by the IV–D agency *in the state in which the family is receiving aid.*"[10] *Id.* (emphasis added). Unlike collections made within state, interstate collections do not simply involve bureaucratic delays and miscommunications between agencies of one state. The home state is dependent on the good will and efficiency of the receiving state to carry out the home state's obligations. Compliance enforcement is subject to comity and the collection steps taken by the receiving state, over which the home state has no control. On the other hand, collecting agencies within one state are, or certainly can be, subject to the Title IV–D supervising agency's control. In establishing its program, the home state can vest that agency with authority to ensure that its sub-agencies perform their obligations promptly, at the risk of penalties in their collective failure of compliance with the statute.

The problem raised by plaintiffs is not one which concerns determining when a payment should be deemed collected, but whether the timing of such payment should be a factor in determining the entitlement to pass-through payments. For example, Beasley claims that her former husband paid a support payment to the Sacramento (California) County Child Support Unit on July 22, 1985. That sum was forwarded to Connecticut, but not recorded as received by the Bureau of Collections until August 1985. Mr. Beasley made his August 1985 child support payment on August 8, 1985. That payment was also recorded as received by the Bureau of Collections in August. Plaintiff Beasley received one $50 pass-through payment.

The regulations provide that, as an interstate collection and for the reasons noted *supra,* the payment made in California in July 1985 is considered collected as of August when it was received. § 302.51(a). Reading the first and third sentences of § 302.51(a)(1) together, the regulations provide that if the state collects an amount of money which represents the current month's support obligation plus payment on a previous month or months' obligations, "the family shall *only* receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected.... No payment shall be made to a family under this paragraph for a month in which there is no child support collection." *Id.* (emphasis added). Thus, the regulations are quite clear in addressing the situation when two or more support payments are collected in the same month only one pass-through payment need be made.

The problem with the regulation lies not in determining when a pass-through payment should be deemed collected, but how the situation should be handled where more than one payment is collected in any given month. As noted above, the regulations would answer this question by awarding only one pass-through payment and by treating the second payment as an arrearage for which no pass-through payment would be made. That answer, however, is not consistent with either the statutory language or the purpose of the Act. Section 657(b)(1) provides that "the first $50 of such amounts as are collected periodically which represent monthly support payments" should be awarded to the AFDC family. No exception to the statute is either expressly or impliedly made for situa-

---

**9.** This issue is particularly relevant to Beasley, whose former husband pays child support in the amount of $200 per month through the Sacramento (California) County Child Support Unit.

**10.** Agency interpretations are entitled to great weight and, absent a clear indication that such interpretations are contrary to the intent of the legislation or simply wrong, deference should be given to that agency's interpretation. *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Auth.,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 339–40, 38 L.Ed.2d 287 (1973).

tions where more than one support payment is received in a given month. The statute quite clearly provides an additional measure of support to the AFDC family. It hardly seems consistent with that policy that an AFDC family should be penalized simply because its support payments are not paid or collected in an orderly, sequential manner.

Although the collection date is properly defined in the regulations as being the date on which the home state's Title IV–D agency collects the payment, that regulation only serves the administrative purpose of triggering the commencement period for the reasonably prompt paying of the pass-through payment. Obviously, the commencement period would not be retroactive to either when the support payment should have been made or to when it was received by the receiving state. To the extent the regulations go further, however, and seek to preclude the making of a second pass-through payment simply because two support payments are collected in the same month, they are in violation of the statute. The regulation hinges the payment of the pass-through payment on irrelevant considerations:

(1) When the support payment is made by the ex-spouse.

(2) When the receiving state processes the payment.

(3) When the home state receives the forwarded payment from the receiving state.

(4) How long the home state takes to administratively record the collection of the payment from the receiving state.

Any combination of these factors could result in the collection of two or more support payments in any given month and not one of which is the fault of the AFDC family. Quite clearly, in the words of the statute, the payments (1) are amounts (2) which were collected periodically and (3) which represent monthly support payments. There is no justification or reason why the collection of more than one payment in a given month is such an administrative burden that it should outweigh the fundamental purpose of § 657(b)(1). The regulation is totally at odds with the statute.[11]

For the foregoing reasons, 45 C.F.R. § 302.51, to the extent it limits the Title IV–D agency's obligation to pay only one pass-through payment in a month where two or more support payments are collected by the home state, is invalid. As to this issue, defendants' motion to dismiss is denied.

Furthermore, the action will not be dismissed as against defendant Harris. Harris, as head of DHR, is partially responsible for the collection of child support. He must bear responsibility if that process does not comport with the law.

## C. *Court Four*

In Count Four, plaintiffs allege that defendants Harris and Salius have failed or

---

11. In considering a similar argument, the district court of Maine returned to the unambiguous language of § 657(b)(1) and refused to place a $50 cap on the amount that can be passed through in a given month where two or more support payments are collected. *Wilcox,* 653 F.2d at 710–11.

> The language of the statute in question is cumbersome, but it is not ambiguous. It reads:
>> the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family....
>> 42 U.S.C. § 657(b)(1).
> An amount which represents a monthly support payment is simply the amount of the monthly support obligation (much as "an amount that represents a year's salary" means the amount that one earns in a year, or "an

amount that represents a monthly mortgage payment" means the amount of the monthly mortgage obligation). The statute instructs that the first fifty dollars of such an amount, once collected by the government, be forwarded to the recipient family. Its use of the term "collected periodically" is clearly intended to provide flexibility that would not be present if the term "collected monthly" were used. Under the interpretation offered by the Secretary in his current motion for reconsideration, "monthly support payments" would have to mean the amount received in a month rather than the amount owed, and the word "periodically" would have to be dropped from the statute and replaced with the word "monthly." This is an unreasonable interpretation of the statute.
> *Id.*

refused "to enforce the requirement that employers timely forward child support payments [in violation of] 42 U.S.C. §§ 654(ii), 666(a)(1) and 666(b)(5), and regulations promulgated pursuant thereto, 45 C.F.R. §§ 303.100(d)(1)(ii) and 303.-100(e)(2)." Complaint at § 64.

Section 666(b)(5), read in conjunction with § 666(b)(6)(A)(i) requires the state to establish a plan for the garnishment of the wages of a parent against whom a support order has issued and to distribute the same expeditiously in accordance with § 657. The regulations require that to "initiate withholding, the State must send the absent parent's employer a notice which" includes, among other things, an indication as to the amount to be withheld, a statement that the employer must send "the amount withheld to the State within 10 days of the date the absent parent is paid," and a provision informing the employer that his compliance is obligatory. 45 C.F.R. § 303.100(d)(i) to (d)(x). Prior to 1986, Connecticut's wage withholding statute required that:

> Commencing no later than the first pay period that occurs after fourteen days following the date of service of a garnishment and *monthly* thereafter, an employer shall pay sums withheld pursuant to the garnishment to the person in whose favor the garnishment was issued.

Conn.Gen.Stat. § 52–362(g) (1985) (emphasis added).

■ To meet the ten-day provision of 45 C.F.R. § 303.100(d)(ii), the statute was amended in 1986 to substitute for "monthly" the phrase: "within ten days of the date the obligor is paid." Whether the statute was amended in a timely fashion need not be decided. Plaintiffs' claim centers on the question of whether defendants Harris and Salius enforced the withholding provision and properly states a claim. Plaintiffs' fourth count will not be dismissed.

## D. *Counts Five and Six*

■ In Counts Five and Six, plaintiffs allege that Harris' and Heintz' "failure to provide Plaintiffs with monthly notice as to amounts of child support received on Plaintiffs' behalf, the dates such payments were received, and whether a pass-through payment will be made, and their failure to provide Plaintiffs with an opportunity for a fair hearing to challenge the amount of the pass-through payment or the failure to make such a payment violates 42 U.S.C. § 602(a)(4) and 45 C.F.R. § 205.10(a)(5) [and] ... deprive[s] the Plaintiffs of their property without due process of law in violation of the Fourteenth Amendment to the United States Constitution." Complaint at ¶¶ 66, 68.

Defendants argue that plaintiffs have neither a statutory nor constitutional right to due process in relation to their eligibility for pass-through payments. Along with the Secretary, they argue that § 602(a)(4) and the relevant implementing regulation, 45 C.F.R. § 205.10(5), applies to Title IV–A financial assistance, not Title IV–D pass-through payments. Defendants argue their role in this area to be a mere conduit between the support obligor and the recipient family, a curious argument in the face of their decisions to pay pass-through amounts only in limited circumstances. Moreover, since the pass-through provision does not affect the family's assistance eligibility, § 657(b)(1), defendants argue that it cannot be considered assistance and thus is not subject to the notice and hearing procedures of § 602(a)(4).[12]

Under § 602(a)(27), a Title IV–A plan must "provide that the State has in effect a plan approved under Part D of this subchapter and operate a child support program in substantial compliance with such plan." Title IV–D is thus incorporated into Title IV–A. Under § 606(b) " 'aid to families with dependent children' means mainly payments with respect to a dependent child or dependent children ... and includes (1) money payments to meet the needs of the relative with whom any dependent child is living." Although the $50 pass-through payment is not considered when determin-

12. Defendants argue that all they are required to provide under Title IV–D to the family is annual notice of the amount of support payments made by the obligor.

ing the amount of assistance paid under Title IV–A, it is not necessarily excluded from the definition of "aid" for purposes of § 602(a)(4). Section 657(b)(1) entitles a family to a $50 pass-through under certain conditions. The intent of that legislation is to enlarge the assistance to the family in raising dependent children. The beneficial interest thus created is sufficient a right to require that plaintiffs have some type of notice and hearing under § 602(a)(4) if that interest is to be affected.

Plaintiffs also have a constitutional right to notice and hearing. The protections afforded by the due process clause of the fourteenth amendment apply to both "liberty" and "property" interests. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Section 657(b)(1) affords plaintiffs a right to a $50 pass-through payment which did not exist prior to the passage of DEFRA. The purpose of this provision was to provide eligible families with additional support. The pass-through provision is not merely a gratuity to be honored willy-nilly, nor is it a bonus to eligible families simply because they are related to a conscientious support obligor. Rather, it is additional assistance. A family eligible under § 657(b)(1) is entitled to the $50. As much as defendants would like to cast themselves as mere conduits, they determine eligibility and make the payments. An erroneous or unfounded denial of a pass-through would deprive plaintiffs of money to which they are entitled. *Cf. Goldberg*, 397 U.S. at 262, 90 S.Ct. at 1017. Plaintiffs clearly have a property interest in the pass-through payment. It is not a mere expectation for which they might hope. Defendants are obliged to act such that this interest is not extinguished arbitrarily. That can only be assured by providing plaintiffs with procedural due process. The form of that process depends on circumstances such as the interest at stake, the risk of erroneous deprivation, the value of different types of safeguards, and administrative cost. The requisite level and form of the procedure which would meet the requirement of due process cannot be determined on a motion to dismiss. *Cf. Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982); *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Plaintiffs have cognizable claims under Counts Five and Six as against defendants Harris and Heintz.

### E. *Eleventh Amendment Immunity*

Defendants have lastly raised the eleventh amendment immunity defense as a bar to plaintiffs' request for recomputation of their past eligibility for pass-through payments and any damages to which they might be entitled under such recomputation. There is no dispute that plaintiffs may maintain their request for injunctive and declaratory relief and any prospective monetary relief which arises because of the adjudication of their rights. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There is also no dispute that the eleventh amendment bars an award of retroactive damages "which must be paid from public funds in the state treasury." *Id.* at 663, 94 S.Ct. at 1355. Thus, the only dispute is whether an award to redress wrongfully withheld pass-through payments is to be deemed as being paid from the state treasury. Surely such an award would be paid by the state from accounts in the name of the state. Indeed, pass-through payments not made to the AFDC family are credited to the state's account along with the remainder of the support obligation. To cloak such payments with immunity, however, ignores the fact that but for the illegal retention of the money by the state it would have been properly forwarded to the AFDC family as required under § 657(b)(1). Section 657(b)(1) was enacted to assist AFDC beneficiaries, not AFDC providers. The state may not violate the law by converting mon-

ey which lawfully belonged to one of its citizens and then seek to insulate its actions under the immunity doctrine. Plaintiffs had a property interest in the pass-through payments which have allegedly been withheld. If the state violated the law and illegally retained those payments, it cannot hide behind the eleventh amendment.

### Re Class Certification

Plaintiffs have moved for class certification. "[P]laintiffs seek to represent all families who have received since October 1, 1984, are currently receiving or will receive AFDC benefits from the State of Connecticut, and on whose behalf child support has been paid, is being paid, or will be paid by the absent parent on or after October 1, 1984." Complaint at ¶ 13.

The motion for class certification will be provisionally granted. Quite clearly, this is a case, at least at this point in time, which fits well within the scope of Fed.R.Civ.P. 23. Although there is no named plaintiff who represents a group of AFDC recipients whose child support obligations are paid directly rather than through a garnishment process, plaintiffs may pursue discovery on this class of persons and amend their complaint to name a suitable representative. The class may be finally certified subsequent to the close of discovery and pending the filing of any further motions relevant thereto.

### Conclusion

1. Defendants' motion to dismiss is denied except as to the claim in Count Three that the state incorrectly records the collection date for out-of-state child support payments.

2. The Secretary's motion to dismiss or alternatively for summary judgment is granted.

3. Plaintiffs' motion to grant class certification is provisionally granted.

SO ORDERED.