SHARLENE McQUEEN et al., Appellants, and EVELYN DAVILA et al., Intervenors-Appellants, v WILLIAM J. GRINKER et al., Respondents.

Plaintiffs and intervenors (hereinafter plaintiffs) challenge the direct vendor program pursuant to which the New York City Department of Social Services makes direct payments of rent to certain shelter vendors on behalf of public assistance recipients. The IAS court denied plaintiffs' motions for preliminary relief, class certification, and summary judgment, and granted respondents' motions for summary judgment, dismissing the complaint with prejudice and declaring "that plaintiffs have failed to show any governmental action that resulted in a deprivation of constitutional or statutory right."

Interwoven throughout plaintiffs' briefs submitted upon this appeal are two arguments: First, plaintiffs contend that the failure of defendant New York City Department of Social Services (DSS) to furnish public assistance recipients with bimonthly notice of direct vendor payments violates a statutory right to monitor their benefits and deprives them of the opportunity to exercise their right to administrative review. Plaintiffs contend that recipients should be provided with information concerning the name of the housing vendor, the address to which the check was mailed, the amount of payment and the status of previously issued checks, specifically

whether any checks remain outstanding or were returned to DSS uncashed. Secondly, plaintiffs argue that the failure to furnish recipients facing possible eviction in landlord-tenant proceedings with admissible evidence of payments made to the housing vendor in a timely fashion deprives them of the opportunity to assert a meritorious defense in violation of their procedural due process rights. By way of relief, their reply brief states that "plaintiffs seek a declaration from the court that defendants have utterly failed to take steps to enforce the constitutional and statutory rights of direct vendor families to monitor their public assistance benefits, exercise their administrative hearing rights, or defend in housing disputes."

Plaintiffs point to no express statutory provision requiring periodic notice of direct vendor payments to be made to public assistance recipients. Rather, they argue that "implicit in the language of the A.F.D.C. [Aid to Families with Dependent Children] program is the requirement that such information be provided by defendant *[sic]*, independent of any duty to provide benefits directly to recipients." Plaintiffs attempt to infer, from various vague pronouncements concerning broad statutory goals and policies, that such information is required in the interests of assisting recipients "to gain greater ability to manage funds" or in administering "the A.F.D.C. program in a proper and efficient manner." It must be noted, however, that a recipient's participation in the direct payment program is either entirely voluntary or results from a determination by DSS, upon notice and opportunity to be heard in opposition, that involuntary participation is required because of a history of mismanagement of funds or involvement in nonpayment proceedings (Social Services Law § 131-a [7]), rendering plaintiffs' arguments unpersuasive.

Requirements for notice to recipients of public assistance are governed by the leading case of *Goldberg v Kelly* (397 US 254 [1970]), which holds that entitlement to benefits, once established, is a property right subject to due process protection, therefore requiring that notice and opportunity for a hearing be afforded before benefits are terminated or suspended. The problems complained of by plaintiffs, however, generally concern checks which are delayed, misappropriated, returned uncashed or simply misdirected, events which do not involve the termination, reduction or suspension of benefit payments *(Barrett v Roberts,* 551 F2d 662 [5th Cir 1977]). The cases cited by plaintiffs in support of a monthly notice requirement *(Vanscoter v Bowen,* 706 F Supp 1432 [WD Wash 1988];

*Beasley v Harris,* 671 F Supp 911 [D Conn 1987]) are inapposite, involving not a fixed monthly grant, as here, but a fluctuating pass-through payment calculated from a number of variables, thus requiring notice of the basis upon which the resultant grant is determined in conformance with the general principles of *Goldberg v Kelly (supra).*

Plaintiffs' contention that lack of periodic notice of benefit payments impedes their statutory right to seek administrative review of the "[i]nadequacy in amount or manner of payment" (Social Services Law § 22 [5] [c]) is equally unconvincing. Concededly, the procedures utilized by DSS may serve to delay discovery of problems involving receipt of direct vendor payments, but they do not amount to interference with the right of the recipient to secure review in a fair hearing. Moreover, the mere fact that a particular grievance may be the ground for a fair hearing does not operate, ipso facto, to require the agency to provide a mechanism to ensure its immediate discovery by every recipient who might potentially be affected. The obligation to provide a fair hearing is mandated by statute and enforceable by the courts, whereas the manner and frequency of notices regarding benefit payment involve a matter of administrative discretion which is the province of a separate branch of government upon which the courts may not intrude *(Klostermann v Cuomo,* 61 NY2d 525, 535-537; *Jones v Beame,* 45 NY2d 402). While the statute may express a definite policy of promoting the prompt and accurate payment of benefits to recipients of public assistance grants, it does not "purport to create an individual right to have that policy perfectly achieved or even pursued in any particular manner" *(Black v Beame,* 419 F Supp 599, 609). If, as alleged, DSS has concluded, in the exercise of administrative discretion, that the cost of mailing monthly or bimonthly notices to recipients detailing direct vendor payments is not warranted in view of the limited benefit to be conferred, the wisdom of that determination, in the absence of a violation of express statutory discretion, is not a justiciable question.

Plaintiffs' second argument, that the failure of DSS to provide recipients with admissible proof of direct vendor payments for use in landlord-tenant proceedings infringes upon their due process rights, presents a far more serious issue. As a direct consequence of the agency's action in isolating them from the process, DSS is the exclusive source of evidence concerning rent payments made on behalf of public assistance recipients in the direct vendor payment program. The pleadings contain accounts of recipients who were actually evicted

or who narrowly escaped eviction because DSS could not or would not provide evidence of rent payment. In a city where the availability of decent, affordable housing is extremely limited, the prospect of being rendered homeless is very real.

While the seriousness of the potential loss of one's home cannot be minimized, there is an even more fundamental concern which is raised by the pleadings. Complaints involving the inefficiency of DSS in providing information for use in summary proceedings for the recovery of real property are not new and have emanated variously from tenant organizations, landlord groups, the landlord-tenant Bar and the Housing and Civil Court Judges themselves. Assuming, for the purpose of the motion to dismiss the complaint, that plaintiffs can establish the truth of the allegations advanced in this case *(Patrolmen's Benevolent Assn. v City of New York,* 27 NY2d 410, 415; *Cohn v Lionel Corp.,* 21 NY2d 559), there emerges a pattern of indifference to and disrespect for the efficient conduct of judicial proceedings which cannot be permitted to continue. In the interest of preserving the very function of the courts in our society, we cannot allow the judicial process to be rendered ineffectual because vital facts are not made available, whether due to bureaucratic inefficiency or administrative recalcitrance.

It is clear that in a summary nonpayment proceeding (RPAPL 711, 732), proof of rent payments made constitutes the very foundation of the case. Where, as here, payment is made in the form of a check sent by a third party directly to the landlord, the only effective means of proving that payment was actually received is by producing copies of the negotiated checks. If this documentation is not made available, the court must either adjourn the proceeding (limited to a period of 10 days by RPAPL 745) or base its judgment on the available evidence. Neither disposition is satisfactory. If the court ignores the time limitation of RPAPL 745 and adjourns the matter indefinitely, the owner of the premises is prejudiced by having to house a tenant for whom no rent is being received and who ultimately may be found by DSS to be ineligible for a shelter allowance for the period in question. If, on the other hand, the court renders a timely judgment based upon the available evidence, the tenant may be evicted even though it is eventually established that all rent due the property owner was actually received. (Indeed, this is the situation alleged by intervening plaintiff Bruce Marshall whose landlord had received direct vendor payment checks for every month in dispute, returning some to DSS and cashing others.) It is clear,

therefore, that without proof which is within the exclusive possession of DSS, the judicial process is effectively thwarted and a just outcome cannot be achieved.

Resolution of the problem, however, does not require resort to an action such as this. The courts possess broad powers to compel the production of evidence, and the relief sought by plaintiffs may be obtained within the context of the summary proceeding. In this way, DSS may be compelled to solve the problem without encroachment upon the prerogative of a coordinate branch of government to determine the means by which that end is to be accomplished.

It bears emphasis that a summary proceeding pursuant to the Real Property Actions and Proceedings Law is a special proceeding (CPLR art 4) in which disclosure may be utilized by leave to court (CPLR 408; *New York Univ. v Farkas,* 121 Misc 2d 643; Siegel, NY Prac § 577). In the briefs submitted upon this appeal, the parties make reference to a revised check retrieval system which was implemented by DSS on March 1, 1988. This system is purportedly designed to allow DSS to deliver certified copies of direct vendor checks to the court within 10 working days. Where DSS documentation is required to resolve a nonpayment proceeding, the obvious solution is for the court to issue a judicial subpoena (CPLR 3120 [b]) directing that copies of the necessary checks be produced within a reasonable period of time. Where appropriate, a subpoena duces tecum may be directed to the DSS caseworker for production of records pertaining to rent payments. If the records are not produced, the court may invoke contempt powers to exact compliance (CPLR 2308 [a]; CCA 110 [e]). In addition to any sanctions which may be imposed against agency officials, DSS is statutorily liable for damages sustained by reason of its failure to comply with the subpoena (CPLR 2308 [a]).

Because of the pivotal role assumed by DSS in not only making rent payments directly to housing vendors but also in determining for which periods of time payment is to be made, there may arise instances in which complete relief cannot be accorded to the parties to the summary proceeding without its appearance as a party in the action (CPLR 1001). Joinder by leave of court is authorized by CPLR 401, and the Civil Court Act expressly authorizes joinder of a "city department" where it will "promote the public interest" (CCA 110 [d]). DSS, in its brief, states that some two thirds of the approximately 30,000 direct vendor payments are made to publicly subsidized housing programs (the New York City Housing Authority or the

Department of Housing Preservation and Development) in which the recipient's shelter grant constitutes full payment of the rent. Certainly, in such instances, where the rent check merely represents a transfer payment from one public agency to another (both of which are intended to assist the public assistance recipient), there is no need to subject the innocent tenant to eviction because the administrative bureaucracies are unable to reconcile their accounts. (Intervening plaintiff Nannette Pichon was allegedly threatened with eviction under such circumstances.) In these cases at least, and perhaps in other appropriate situations, the court may properly join DSS as a party and stay judicial proceedings until such time as the agencies resolve their bookkeeping differences. Any prejudice occasioned by DSS delay will therefore be confined to the agencies and can be remedied administratively within the executive branch, without either damaging the tenant or encumbering the courts.

In fairness to the agency, the assignment of DSS liaison personnel to civil courthouses in New York, Bronx, Brooklyn, and Queens Counties has promoted communication between DSS and the court and represents a positive response to the concerns raised by plaintiffs. Installation of video display terminals linked to the DSS computer system is planned and will facilitate obtaining payment information, although it will not show whether a contested payment was actually received by the housing vendor. While it is therefore not a complete solution to the problems complained of by plaintiffs, a computer record of payments made will greatly assist the court in determining which months' rent checks are involved in the dispute.

The inconvenience which may result from dilatory conduct on the part of DSS is apparent. However, plaintiffs have failed to demonstrate that the courts are unable to fashion an effective remedy so as to require resort to the extraordinary relief they seek. Concur—Murphy, P. J., Sullivan, Carro, Wallach and Rubin, JJ.