OPINION OF THE COURT
Stuart C. Cohen, J.
Petitioner, the New York City Housing Authority, commenced these summary nonpayment proceedings against vari *57 ous respondents. (L&T 21169/89, 21400/89, 21849/89, 21178/ 89, 24108/89, 23752/89, 24331/89, 23408/89.) Respondents failed to answer the petitions and these matters were referred to this court for the entry of default judgments. Notices of, inquest were then sent to petitioner’s attorney and respondents.
On the inquest dates, petitioner appeared but respondents did not. This court conducted an inquest on each proceeding wherein petitioner, through various housing assistants, gave testimony in support of its application for possessory judgments. The facts elicited at each inquest were substantially similar. The housing assistants testified that respondents are female heads of household with minor children. The Housing Authority had knowledge of the names and ages of these children and the fact that respondents received public assistance. There was also testimony in each case that respondents’ rent was previously paid by the Department of Social Services (DSS) through its direct vendor program. In this program, DSS makes direct payments of rent to certain shelter vendees on behalf of public assistance recipients. The housing assistants also testified that DSS stopped making direct vendor payments, that respondents have not made any payments and that respondents and their children still reside in the apartments. Due to these facts, petitioner requested a possessory judgment in each proceeding.
After inquest, this court reserved decision until the submission of a memorandum of law on the issue of how the rights of the minor children living in the apartments are protected in a situation such as this where DSS stops making rent payments and the parents are either unable or unwilling to make such payments, thereby subjecting their children to eviction from their home.
The court notes that it is the law of this State to provide for those unable to maintain themselves and it has long been the law and policy of this State to provide for needy children and to ensure that they are raised in the home. Provisions of assistance to needy persons is not even a matter of legislative grace but is specifically mandated by the State Constitution. (Tucker v Toia, 43 NY2d 1, 7.) Section 1 of article XVII of the NY Constitution states: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.”
*58 The Legislature has implemented this constitutional provision through various programs which provide public assistance to needy families for food, other necessities and shelter grants. These provisions include Social Services Law § 350 (1) (a) which provides for allowances adequate to enable the father, mother, or other relative to bring up the child properly; section 344 (2) which specifies that aid shall be construed to include those services which may be necessary for each child in light of particular home conditions or other needs; and section 350-j (3) which provides that emergency assistance to needy families with children shall be provided when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home. The Court of Appeals in Jiggetts v Grinker (75 NY2d 411, 417) has construed these provisions: "as manifesting the Legislature’s determination that family units should be kept together in a home-type setting and imposing a duty on the Department of Social Services to establish shelter allowances adequate for that purpose.” The court also construed these provisions as manifesting a legislative intention of providing special protection to children. The court stated: "it is reasonable that the Legislature provided special protection to ensure the health and well-being of children in a program that is dedicated to protecting the welfare of children deprived of parental support.” (Jiggetts v Grinker, supra, at 420.)
It is also noted that New York State has a long history of protecting children and ensuring that they are raised in the home. The first legislation dealing with the subject was the Child Welfare Act of 1915 (L 1915, ch 228) which established County Boards of Child Welfare and authorized them to "grant allowances to widowed mothers with one or more children under the age of sixteen years, in order that such children may be suitably cared for in their homes.” (General Municipal Law former § 148.) The legislative commission that drafted the 1915 act explained that its principal purpose was to ensure that children are raised in the home: "The normal development of childhood is one of the main functions of government. The best education requires a proper home training, and it thereby becomes the duty of the State to conserve the home as its most valuable asset whenever factors, other than improper guardianship of the parents, threaten its destruction.” (1914 Report of NY St Commn on Relief for Widowed Mothers, 1914 NY Senate Doc No. 64, at 3.)
These policies continue in programs set forth in the Social *59 Services Law such as Aid to Families with Dependent Children, Supplemental Security Income program, and Home Relief. Thus New York State has a strong public policy of making sure that children are raised in the home and the Department of Social Services has the duty to provide for this purpose. (Social Services Law § 131 [1].) Since this legislation and policy derives from the State Constitution, it cannot be ignored or easily evaded in either its letter or spirit. (Tucker v Toia, supra, at 8; Flushing Natl. Bank v Municipal Assistance Corp., 40 NY2d 731, 737, 739; Sgaglione v Levitt, 37 NY2d 507.)
In the instant cases, respondents relied upon DSS for financial assistance and both petitioner and respondents relied upon DSS for the payment of rent. In fact, since DSS paid rent directly to petitioner through its direct vendor program, respondents were isolated from the process of paying rent. Petitioner testified in each case that DSS initially paid the rent but that it stopped sending the direct vendor checks. It was not known, however, whether this was due to any determination of ineligibility by DSS, or to any mistake or inadvertence by respondents, petitioner or by DSS. Whatever the reason, and notwithstanding any fault, the nonpayment of rent will cause the eviction of children living in the apartment. An eviction for nonpayment of rent will not only have a profound impact on the health and welfare of these children but it contravenes the established policy of this State of providing support for needy families and ensuring that they and their children are maintained in their home. (Social Services Law § 350 [1] [a].) While the court cannot condone respondents’ failure to appear in these proceedings, this failure should not deprive the children of any assistance to which they are entitled (see, Matter of Richardson v Blum, 80 AD2d 901; Matter of Springs v Blum, 74 AD2d 925; Matter of Westby v Berger, 54 AD2d 911, 912).
The failure of the parents to appear does not deprive the court of power to act on behalf of the children. Pursuant to the concept of parens patriae, the State may constitutionally act as a "superparent” to all infants. (Weber v Stony Brook Hosp., 95 AD2d 587, affd 60 NY2d 208; Matter of Female S., 111 Misc 2d 313.) As the Court of Appeals stated in Matter of Sanjivini K. (40 NY2d 1025, 1027), when the health and welfare of a child is at issue: "ingenuity and energy should be brought to bear, within the limits of due process of law and the applicable statutes, promptly to make appropriate provi *60 sion for [his or] her welfare. It is not mere rhetoric to say that a child in need or distress is a ward of the State which exercises its powers parens patriae through the judicial branch.”
Therefore, since it is the policy and law of this State to ensure that needy children receive sufficient assistance to be maintained in their home, this court can exercise its powers parens patriae to ensure that these children receive the assistance that they are entitled to under law. Traditionally, it is the policy of the Civil and Housing Court Judges to refer tenants to DSS liaison personnel located in the courthouse or to telephone DSS on behalf of the tenants. Other powers available to the court include:
1) In situations involving the question of whether DSS has made payment, the court can issue a judicial subpoena directing that copies of checks be produced within a reasonable period of time. (McQueen v Grinker, 158 AD2d 355 [1st Dept].)
2) A subpoena duces tecum may be directed to the DSS caseworker for the production of rent records relating to payment.
3) The court may join DSS as a party to the proceeding. The New York City Civil Court Act expressly authorizes joinder of a "city department” where it will promote the "public interest” (CCA 110 [d]; McQueen v Grinker, supra). Of course, not every summary proceeding involving public assistance justifies joinder. Nor should this court undertake to review any final determination by the Commissioner. However, where there has been no final determination, where the bureaucracy has apparently stumbled and where the presence of the Commissioner might avert a miscarriage of justice, joinder should be ordered. (Trinity Holy Church of Christ v Frazier, 88 Misc 2d 351, 352.)
4) In situations where the rent check represents a transfer of payment from one public agency to another both of which are intended to assist the public assistance recipient (as in this case where the rent check represents a transfer of funds from DSS to the New York City Housing Authority) the court should join DSS as a party and stay the judicial proceedings until such time as the agencies resolve their bookkeeping differences. (McQueen v Grinker, supra.)
5) The court can also appoint a guardian ad litem for the children (CPLR 1201,1202).
Generally, the natural parent should act as the natural *61 guardians of their children (Sutherland v City of New York, 107 AD2d 568, affd 66 NY2d 800). However, in these cases, the parents have failed to appear in a proceeding which can directly cause their children to become homeless. Therefore, there is a presumption that someone other than the parent should be appointed guardian for the purpose of this litigation. Additionally, even if one of the parents appeared in this proceeding, the court may appoint an attorney to represent the rights of the minor children. (CPLR 1102 [a].) Even if the parents are not entitled to assistance, the children may not be deprived of assistance which they are entitled to receive. (Matter of Richardson v Blum, 80 AD2d 901.)
Thus, where the parents are unable to provide for or act on behalf of their children and where the Department of Social Services is not undertaking its obligations, the court may exercise its powers parens patriae by taking action to ensure the welfare of these children.
In the instant cases, the dispute involves the transfer of payment between DSS and the Housing Authority, two executive branch agencies. The court will, therefore, join DSS as a party and stay these proceedings until the agencies resolve the dispute as to payment. As the Appellate Division stated in McQueen v Grinker (supra, at 360): "In these cases at least, and perhaps in other appropriate situations, the court may properly join DSS as a party and stay judicial proceedings until such time as the agencies resolve their bookkeeping differences. Any prejudice occasioned by DSS delay will therefore be * * * remedied administratively within the executive branch, without either damaging the tenant or encumbering the court.”
If such joinder does not resolve the situation, petitioner may move to vacate the stay, and the court may, if it deems appropriate, appoint a guardian ad litem for the children living in these apartments.