**Pearl Jane VANSCOTER; Lori Arndt; Doris Munroe; Barbara Wilson, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,**

v.

**Louis W. SULLIVAN,\* Secretary of Health and Human Services; Richard Thompson, Acting Secretary, State of Washington, Department of Social and Health Services, Defendants–Appellants,**

**and**

**Louis W. Sullivan,\* Secretary of the United States Department of Health and Human Services, Defendant.**

---

\* Louis W. Sullivan has been substituted for Otis R. Bowen pursuant to Fed.R.App.P. 43(c)(1).

Pearl Jane VANSCOTER; Lori Arndt; Doris Munroe; Barbara Wilson, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,

v.

Richard THOMPSON, Acting Secretary, State of Washington, Department of Social and Health Services, Defendant,

and

Louis W. Sullivan, Secretary of the United States Department of Health and Human Services, Defendant–Appellant.

Nos. 89–35151, 89–35292.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1990.

Decided Dec. 5, 1990.

Robert E. Keith, Office of Gen. Counsel, Dept. of Health and Human Services, Washington, D.C., and Daniel Radin, Asst. Atty. Gen., State of Wash., for defendants-appellants.

Thomas E. Ashton, Evergreen Legal Services, Bellingham, Wash., for plaintiffs-appellees.

Before KOELSCH, BROWNING and BEEZER, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Plaintiffs represent a class of recipients of Aid to Families with Dependent Children (AFDC) under Title IV–A of the Social Security Act, on whose behalf the state collects child support payments. Defendant Sullivan is the Secretary of the United States Department of Health and Human Services (the federal Secretary); defendant Thompson is the Secretary of the Washington Department of Social and Health Services (the state Secretary).

Plaintiffs challenge federal regulations and state practice relating to so-called "pass-through" payments to plaintiffs from child support payments collected from an absent parent under the Child Support Enforcement Program, Title IV–D of the Act.

The district court granted plaintiffs the relief they sought, and defendants appealed. We affirm in part, reverse in part and remand.

I.

As a condition to receiving AFDC benefits, a parent is required to assign the state his or her right to child support payments. 42 U.S.C. § 602(a)(26) (1988). The state is required to enforce the absent parent's support obligations. *See generally id* §§ 651–665. The Act provides the method of distributing the support payments collected by the state. *Id.* § 657. In some circumstances (exactly what circumstances is an issue here), the first $50 of a monthly support payment is passed through to the family. *Id.* § 657(b)(1). This pass-through payment is disregarded when the family's eligibility for AFDC benefits is recalculated each month. *Id.* § 602(a)(8)(A)(vi).

The pass-through program was enacted as part of the Deficit Reduction Act of 1984 (DEFRA), effective October 1, 1984. Until amended by the Family Support Act of 1988, section 657(b)(1) provided as follows:

[t]he first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month.

*Id.* § 657(b)(1) (1982 Supp. IV), *amended by* 42 U.S.C. § 657(b)(1) (1988).

To implement the pass-through program, the federal Secretary promulgated 45 C.F.R. § 302.51(b) (1984), which interpreted section 657(b)(1) to permit the state to pass through only $50 per month, and only from a support payment collected by the recipient's state in the month it was due.[1]

Plaintiffs contended and the district court held that prior to the 1988 amendments, section 657(b)(1) unambiguously entitled AFDC recipients to a pass-through payment from every support payment received by the state, and the regulation barring pass-throughs with respect to delinquent support payments was therefore invalid.[2]

This issue was resolved prospectively by the Family Support Act of 1988, Pub.L. No. 100–485, 102 Stat. 2343 (1988) (1988 Act). The 1988 Act provided that after January 1, 1988, the effective date of the Act, the $50.00 pass-through payment applied both to the support payment for the then-current month and to each payment for prior months collected during the current month, provided the support payment for a prior month was paid when due.[3] Thus the 1988 Act confirmed the position of plaintiffs and the district court that more than one pass-through payment might be required in a given month;[4] but, unlike plaintiffs and the

1. Section 302.51(b)(1) provided in part:
Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family.... If the amount collected includes payment on the required support obligation for a previous month or months, the family shall only receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected. 45 C.F.R. § 302.51(b)(1) (1984).

2. Plaintiffs limit their argument to the contention section 302.51(b) is contrary to the express language of the statute. Plaintiffs do not argue, and we do not consider, whether the regulation exceeds the federal Secretary's statutory authority or is arbitrary and capricious. *See Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir.1988).

3. As amended, 42 U.S.C. § 657(b)(1) provides:

[O]f such amounts as are collected periodically which represent monthly support payments, the first $50 of any payments for a month received in that month, and the first $50 of payments for each prior month received in that month which were made by the absent parent in the month when due, shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month.
42 U.S.C. § 657(b)(1) (1988).

4. Plaintiffs assert defendants continued to adhere to 45 CFR § 302.51(a) without regard to the changes effected by the 1988 Act. Defendants deny it. If such conduct occurred it would be plainly contrary not only to the statute but also to the district court's injunctions. Whether such conduct did occur must be established in proceedings initiated in the district court.

district court, limited the pass-through payments to support payments that were paid when due.

Defendants moved to vacate, amend or terminate the injunction in light of the statutory changes. The district court recognized the amendment barred any pass-through on delinquent support payments, but held the amendment did not affect the court's earlier holding that prior to the effective date of the amendment, plaintiffs were entitled to a pass-through for every payment received without regard to whether the payments were timely. The court issued an Amended Declaratory Judgment and Permanent Injunction in accordance with these determinations.[5]

■ On this issue we find ourselves in disagreement with the court below and with the First Circuit's holding in *Wilcox v. Ives*, 864 F.2d 915 (1st Cir.1988). We conclude the language of former section 657(b)(1) is ambiguous, and the federal Secretary's administrative interpretation is not inconsistent with the statute. We therefore defer to the Secretary. *See Young v. Community Nutrition Inst.*, 476 U.S. 974, 980–81, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986); *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

It is simply not clear to us from the language of former section 657(b)(1) alone, whether Congress intended recipients to receive a $50 pass-through payment for every monthly child support payment collected in a particular month, or to limit pass-through payments to monthly support payments collected in the month they were due. Either interpretation is plausible.

A.

Related statutory provisions neither resolve the ambiguity nor make the federal Secretary's interpretation impermissible.

Section 657(b)(1) must be read in conjunction with section 602(a)(8)(A)(vi), which authorizes the disregard of pass-through payments in determining a household's eligibility for AFDC benefits. Section 602(a)(8)(A)(vi) appeared to limit the disregard of pass-through to a maximum of $50 per month, and thus supported the Secretary's interpretation.[6] Plaintiffs cite the First Circuit's position that section 602(a)(8)(A)(vi) simply does not address "the issue of payments for more than one month being received in a single month." *Wilcox*, 864 F.2d at 918. However, full acceptance of this view would not render the Secretary's reading of section 657(b)(1) unreasonable.

Section 657(b)(1) must be read in harmony with the other sub-parts of section 657(b). The federal Secretary reads the subsection as a whole to establish a rational hierarchy of priorities for the distribution of monthly support payments.[7] Plain-

---

**5.** During the period from November 13, 1988 through December 31, 1988, defendants were enjoined from preventing or impeding the making of payments to class members of the first $50 of each child support collected by the state. During the period from and after January 1, 1989, defendants were enjoined from preventing or impeding the payment of the first $50 of each child support payment received in the month when due, and the first $50 of child support payments for each prior month received in that month if such payments were made by the absent parent in the month when due.

**6.** Prior to the 1988 amendments, section 602(a)(8)(A)(vi) provided that in determining a family's eligibility for AFDC the state agency:

shall disregard the first $50 of any child support payments received in such month with respect to the dependent child or children in any family applying for or receiving aid to

families with dependent children (including support payments collected and paid to the family under section 657(b) of this title).

42 U.S.C. § 602(a)(8)(A)(vi) (1982 Supp. IV), *amended by* 42 U.S.C. § 602(a)(8)(A)(vi) (1988).

**7.** Prior to January 1, 1989, section 657(b) provided, in its entirety, as follows:

The amounts collected as support by a State pursuant to a plan approved under this part during any fiscal year beginning after September 30, 1976, shall (subject to subsection (d) of this section) be distributed as follows:

(1) the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month;

(2) such amounts as are collected periodically which are in excess of any amount paid to the

tiffs' response, in substance, is simply that (b)(2), (3), and (4) do not address the issue of multiple pass-through payments and therefore these related provisions do not forbid plaintiffs' reading of (b)(1).[8] Again, acceptance of plaintiffs' reading of (b)(2), (3) and (4) does not render the Secretary's reading of (b)(1) unreasonable.

### B.

The legislative history is neither clarifying nor inconsistent with the federal Secretary's interpretation. The pass-through provisions first appeared in the final hours of Conference Committee negotiations. There are no legislative history materials revealing Congress' intention.[9]

The district court identified at least four goals of the pass-through program: "(1) to provide an incentive for AFDC recipients to cooperate with support enforcement; (2) to provide an incentive for absent parents to make regular and timely support payments; (3) to provide supplemental income to needy families; and (4) to reduce governmental spending and the federal deficit." The district court concluded these purposes are served "regardless of whose interpretation of the statute is adopted." We agree.

### C.

When the text and legislative history fail to resolve an ambiguity, we ordinarily defer to the administrative interpretation if it is consistent with the language of the statute. *See Young*, 476 U.S. at 980–81, 106 S.Ct. at 2364–65; *Chevron*, 467 U.S. at 842–45, 104 S.Ct. at 2781–83. Plaintiffs argue, however, that the federal Secretary's regulations are entitled to no deference because they have been subject to frequent and inconsistent change.[10]

Reviewing this administrative history, the First Circuit concluded "[d]eference is

---

family under paragraph (1) and which represent monthly support payments shall be retained by the State to reimburse it for assistance payments to the family during such period (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing);
(3) such amounts as are in excess of amounts retained by the State under paragraph (2) and are not in excess of the amount required to be paid during such period to the family by the court or administrative order shall be paid to the family; and
(4) such amounts as are in excess of amounts required to be distributed under paragraphs (1), (2), and (3) shall be (A) retained by the State (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing) as reimbursement for any past assistance payments made to the family for which the State has not been reimbursed or (B) if no assistance payments have been made by the State which have not been repaid, such amounts shall be paid to the family.
42 U.S.C. § 657(b) (1982 Supp. IV), *amended by* 42 U.S.C. § 657(b) (1988).

**8.** Plaintiffs' argument rests on the premise that subsection (b) as a whole applies only to support payments during the period the family is receiving AFDC assistance. According to plaintiffs, "such period" in subsections (b)(2) and (b)(3) refers to the period for which support is collected and may include more than one month. Subsection (b)(4), then, governs the distribution of amounts already in arrears before the family began receiving AFDC assistance, but collected during the period the family

is receiving AFDC assistance. No pass-throughs are permitted from these arrears payments.

**9.** Defendants point to the fact that in the legislative history of the 1988 amendments, the amendments to sections 602(a)(8)(A)(vi) and 657(b)(1) are referred to as "confirming" or "clarifying" rather than modifying these provisions. *See* S.Rep. No. 377, 100th Cong. 2d Sess. 17, *reprinted in* 1988 U.S.Code Cong. & Admin. News 2776, 2794; *see also* H.R.Conf.Rep. No. 998, 100th Cong., 2d Sess. 98, *reprinted in* 1988 U.S.Code Cong. & Admin.News 2879, 2886. They argue the pre-amendment version must also be read as limiting pass-through payments to support payments made when due. However, the Senate Committee specifically admonished that no inference was to be drawn from the 1988 amendments as to the pre-amendment meaning of the subsection. *See* S.Rep. No. 377, 100th Cong., 2d Sess. 17, 1988 U.S.Code Cong. & Admin.News 2794 ("The Committee does not intend that an inference should be drawn from the enactment of this provision or its effective date as to the meaning of the law as previously in effect.")

We also decline to rely on inferences drawn from the regulations issued by the Secretary to implement a brief experimental pass-through program under a 1974 statue, Pub.L. No. 93–647, 88 Stat. 2351 (1974). The 1974 statute appears to have had a different purpose than the current program. *See Wilcox*, 864 F.2d at 921–22.

**10.** As originally published September 10, 1984, 45 C.F.R. § 302.51 would have applied pass-through payments to "collections of current sup-

not appropriate when an agency's interpretation has radically and repeatedly alternated between polar extremes and which in the time frame of the instant lawsuit had settled on a particular interpretation which defies common sense." *Wilcox*, 864 F.2d at 925.

With all respect, this appraisal is excessively harsh. The Secretary's sequential positions relate primarily to changing definitions of "date of receipt" and "date of collection" keyed to the Secretary's perception of the requirements for effective administration of the statute. They do not concern the ultimate question whether the statute entitles recipients to multiple pass-throughs for delinquent child support payments. The statutory language prior to the 1988 amendments appears to us to be susceptible to alternative readings, as we have said, and we find nothing in the Secretary's administration of the pass-through program that would cast doubt on the validity of 45 C.F.R. § 301.51 and the monthly accounting system on which it rests as a reasonable implementation of the statutory scheme that existed prior to those amendments.[11]

## II.

Plaintiffs raised a second major issue in the district court. Plaintiffs contended the federal Secretary's definition of the date of collection as the date child support payments were received by the recipient's home state deprived them unfairly of pass-through payments even when support payments were timely made. Thus, plaintiffs complained they were wrongfully denied pass-through payments when support payments were made when due but were not received by their home state until the following month because (1) the collecting state delayed forwarding child support payments to the recipient's home state (2) an employer delayed forwarding child support payments that were timely withheld from the absent parent's paycheck, and (3) payments timely mailed were received a month after they were due.

In view of the district court's ruling that recipients were entitled to a pass-through payment from every support payment whenever it was received by the recipient's state, the issues regarding time of collection were irrelevant, and the district court did not reach them in its initial decision. The district court addressed the time of collection issues for the first time on defendants' motion to vacate, amend, or terminate the judgment following passage of the 1988 amendments. Interpreting the new language in section 657(b)(1) mandating a

port only, not to collections of arrearages." *Id.* at 35605. Nine days later the Secretary proposed to alter the regulation to apply the $50 pass-through to collection of arrearages if the delay was caused by the employer in wage withholding cases, or by the collecting state in interstate cases. *Id.* at 36797. The Secretary said the proposed changes would effectuate the purpose of the statute. "[T]hus, the IV–D agency will be able to distribute these payments as intended by the statute and to avoid possible inequities resulting from delays in forwarding payments by employers or responding states in interstate cases." *Id.* at 36786; *Accord* 50 Fed. Reg. 19634 (1985) ("this change was proposed because the regulation as it was written did not allow for accurate distribution when current support was collected but not received until a later date by the IV–D agency making the final distribution.") The Secretary withdrew the proposed changes in May 1985 in response to complaints by the states of potential accounting and monitoring problems.

Three years later, on June 9, 1988, the regulation was revised to permit the $50 pass-through

when the child support payment was made by the absent parent to an out-of-state agency on time, but was not timely forwarded to the agency in the recipient's home state. 53 Fed.Reg. 21642 (1988).

11. There is no merit in plaintiffs' contention that 45 C.F.R. §§ 302.5(a) and (b) deny equal protection to families for whom support payments are paid but not received in the month when due "because of systemic delays in transmission." The monthly accounting system on which the regulations are based is rationally related to a legitimate governmental interest in the practical administration of the AFDC program. " 'General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases.' " *Bowen v. Gilliard*, 483 U.S. 587, 599 n. 13, 107 S.Ct. 3008, 3016 n. 13, 97 L.Ed.2d 485 (1987) (citations omitted).

pass-through for each support payment "made by the absent parent" when due,[12] the court held: (1) that in an interstate case a support payment was "made" when received by the collecting state; (2) a payment deducted from an absent parent's paycheck was made on the date the payment was withheld by the employer; and (3) a mailed payment was made on the date of the postmark.

## A.

■ After entry of the district court's amended judgment, the federal Secretary amended 45 C.F.R. § 302.51(a) to provide that in interstate cases the date of collection is the date payment is received by the collecting state rather than by the recipient's home state. 53 Fed.Reg. 21642 (June 9, 1988). The state agrees this amendment was within the Secretary's power. No dispute remains on the merits of this issue. On remand, the district court should consider the necessity for continued injunctive relief with respect to this matter. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n. 10, 102 S.Ct. 1070, 1074 & n. 10, 71 L.Ed.2d 152 (1982).

## B.

■ The federal Secretary contends the withholding issue is moot because he has issued a Notice of Proposed Rulemaking that would adopt plaintiffs' position that support payments withheld from wages should be credited as of the date they are withheld. The protracted nature of agency proceedings and the uncertainty as to whether and when the proposed regulation may be adopted preclude a finding of mootness. *See Group Against Smog & Pollution v. EPA*, 665 F.2d 1284, 1291 (D.C.Cir. 1981). Moreover, a live controversy remains in view of the state's insistence that the proposed rule is inconsistent with the statute.

■ The state asserts the federal Secretary's proposed rule is inconsistent with section 657(b)(1) because as a realistic matter support payments are not "made" when they are merely "withheld to meet the support obligation," [13] but only when funds are actually received by the state. As plaintiffs note, however, the proposed regulation does not define the date on which payments are to be credited against the obligation or compel a pass-through payment of funds not actually received; it merely identifies how funds are to be distributed after they have been received by the state.

The state argues "payment made" should be read to mean "actually received" because the term was used with that meaning in 42 U.S.C. § 602(d)(1) (later repealed), which provided that in determining a family's eligibility for AFDC assistance, earned income credit received by a wage earner through a tax refund or through "payment made by the employer" counted as income, but only when actually received. H.R. Conf. Rep. No. 861, 98th Cong., 2d Sess. 1397, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1445, 2085.

■ Identical words appearing more than once in the same act, and even in the same section, may be construed differently if it appears they were used in different places with different intent. *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932). There are evident policy reasons Congress might wish to count earned income credits only when actually received that do not apply to support payments "made" to a state on the family's behalf. The earned income tax credit is intended to assist poor families and give them an incentive to work. It would make no sense to jeopardize a family's AFDC eligibility because of an earned income

---

12. See *supra* note 3.

13. Amended section 657(b)(1) provides the family shall receive the first $50 of each support payment *"made* by the absent parent in the month when due." 42 U.S.C. § 657(b)(1) (1988) (emphasis added). The federal Secretary's pro-

posed rule would provide "the date of collection for distribution purposes ... shall be the date the wages or other income *are withheld* to meet the support obligation." 54 Fed.Reg. 37870–71 (1989) (to be codified at 45 C.F.R. § 302.51(a)) (proposed Sept. 13, 1989) (emphasis added).

credit to which the family might be entitled but which it had not yet received and could not use. On the other hand, it would needlessly and unfairly penalize a family to deny the family a pass-through payment when a support payment was timely withheld from the absent parent's wages but not forwarded to the state agency until the next month.

Section 657(b)(1) on its face distinguishes the date a support payment is "received" from the date on which it is "made." The distinction would be without meaning if the state's construction of the statute were adopted. Moreover, Congress has mandated use of wage-withholding as a preferred means of collecting child support payments, *see* 42 U.S.C. § 666 (1988), and the Secretary could reasonably conclude Congress did not intend at the same time to penalize families for the employer's delay in remitting payments to the state.

Although the federal Secretary's Action Transmittal and subsequent Notice of Proposed Rulemaking may not in themselves have the force of law, they constitute the Secretary's authoritative administrative interpretation of the governing statute. In these documents the federal Secretary has expressed the firm view that section 657(b) now requires the states to consider timely support payments withheld from wages in the month when due.[14] We find the Secretary's interpretation of the statute reasonable and defer to it.

### C.

■ The federal Secretary takes no position on plaintiffs' proposed "date of postmark rule" beyond asserting that until Congress or the Secretary takes action to the contrary, "there is no federal 'date of postmark' rule," and whether to adopt such a rule therefore is left to each state. Washington has disavowed such a rule. In the absence of federal regulation, we review Washington's practice for compliance with the federal statute. *See Lukhard v. Reed,* 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987).[15]

The state repeats the common meaning and practical consequences arguments it advanced in opposition to the federal Secretary's proposed wage withholding rule. We have dealt with these above. Without citation to legislative history or specific provisions of this statute, plaintiffs invite us to assume Congress intended to require the states to apply the common-law rule that when "payment by mail is permitted, 'payment is made when a letter containing the remittance properly addressed and with postage prepaid is deposited in the mail.'" *American River Lines, Inc. v. Central Soya Co.,* 524 F.Supp. 246, 248 (N.D. Miss. 1981) (quoting 60 Am.Jur.2d *Payment* § 11 (1972)). They also argue a date of postmark rule provides the only fair way of fixing the date on which payment is made, and that the statute's distinction between payments received in a month and payments "received in that month" which were "made . . . in the month when due," accommodates such a rule.

Plaintiffs' arguments may support the reasonableness of a rule interpreting

---

**14.** The Secretary's Action Transmittal stated:

The Family Support Act of 1988 also makes significant changes to the Act affecting requirements for wage withholding. Immediate wage withholding is required in new orders, issued or modified on or after November 1, 1990, and other changes are made which will ensure wage withholding applies in a majority of cases in the future. We believe that under the new law the $50 disregard also applies in any case in which an absent parent's child support payment is irrevocably withheld from his or her wages in the month in which the payment was due. In other words, if an employer withholds child support in the month the support was due and subsequently pays that support to the IV-D agency in a later month, the $50 disregard must be credited for

the period during which the withholding actually occurred. States may be required to notify employers in existing wage withholding cases of the requirement that they identify the date of the income withholding after January 1, 1989.

OCSE-AT-88-17 (Nov. 18, 1988).

The Secretary's Notice of Proposed Rulemaking said "we conclude that the Congress' intent was to apply the $50 pass-through, after January 1, 1989, as of the date of withholding." 54 Fed.Reg. 37866 (1989).

**15.** We do not consider whether state law might require the state to follow a particular rule with respect to the effective date of support payments made by mail.

"made" in section 657(b)(1) to include mailing, but they fall short of demonstrating the state's interpretation that a payment sent by mail is not "made" until actually received is inconsistent with the statute. Neither the statute nor the legislative history suggests Congress considered this specific question. The federal Secretary has expressed the view that plaintiffs' reading "is not the only possible construction of the Statute," and that the state's interpretation is a permissible one absent federal regulation to the contrary.[16] We agree and conclude this aspect of the injunction must be vacated.

### III.

■ Finally, plaintiffs challenged on due process grounds the sufficiency of the notice given recipients by the state when support is collected and when their entitlement to a pass-through payment is determined.

The district court held due process required the state to provide prompt notice of the date support payments are collected, the amount of each collection, how the amount collected has been distributed under section 657(b)(2)–(4) and the recipient's right to a fair hearing. The state contests only the court's requirement that the state give notice of the way in which the support payment was distributed.

The state contends plaintiffs did not seek such relief in their complaint, and the issue was not joined in the district court. The record is to the contrary.[17]

On the merits the state argues the requirement that notice be given of the distribution made of the support payment under

section 657(b)(1)–(4) is excessively onerous because pass-throughs pursuant to subsection (b)(1) are distributed the month after the support is received, whereas distributions under subsections (b)(2)–(4) are made as late as two months after the welfare agency is notified of the collection. *See* 45 C.F.R. § 302.51(b)(3) (1984). The fiscal and administrative burden imposed is an appropriate consideration in determining the notice the government must provide. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). However, the court below required only periodic notice, not monthly notice, and with this flexibility the notice requirement imposed by the court should not be excessively burdensome.

### IV.

The judgment below is affirmed insofar as it mandates pass-through payments for child support withheld from wages in the month when due, and insofar as it directs the state to give periodic notice to AFDC recipients when the state collects child support payments on their behalf. The judgment is reversed insofar as it directs that pass-through payments be remitted to plaintiffs for delinquent child support collected between November 13 and December 31, 1988, and directs the state to adopt the "date of postmark" rule. The judgment is remanded insofar as it requires the state to treat interstate child support payments as made on the date received by the collecting state for a determination of the continued necessity for injunctive relief. On remand, the district court shall recon-

---

**16.** The federal Secretary also asserts plaintiffs have failed to exhaust federal administrative remedies challenging Washington's date of postmark rule.

**17.** The complaint alleged that the state improperly retains support under subsections (b)(2) and (b)(4) that should be passed through to the AFDC family under (b)(1), and that the state failed adequately to inform recipients of its actions. Plaintiffs further alleged the state "does not regularly provide notice to recipients of AFDC of the amount of child support collected by the IV–D agency in any given month, or of how the amounts collected are distributed."

The evidence and argument below dealt with the entire distribution process. Plaintiffs asserted in support of their motion for summary judgment that they were entitled to "adequate notice of the amount of support collected, the method of distribution," and repeated "plaintiffs are entitled to adequate and timely notice of the total amount of support received by OSE, how it is allocated, and what amounts they are entitled to receive." Some two months before the district court entered its Declaratory Judgment and Permanent Injunction plaintiffs lodged with the court as a proposed form of notice the notice provisions to which the state now objects on appeal.

sider plaintiffs' application for attorney's fees in light of this opinion.

Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part and REMANDED.