**Carmen LUYANDO, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, William J. Grinker, Commissioner of the City of New York Human Resources Administration and on behalf of all others similarly situated, and Cesar A. Perales, Commissioner of the State of New York Department of Social Services, Defendants.**

**No. 87 CV 5779 (KMW).**

United States District Court,
S.D. New York.

Nov. 3, 1992.

Marshall Green, Bronx, N.Y., for plaintiff; Steven Godeski, Ian F. Feldman, Legal Aid Soc., Bronx, N.Y., of counsel.

Susan D. Baird, Otto G. Obermaier, U.S. Atty., New York City, for Sullivan.

Isaac Klepfish, Corp. Counsel's Office, New York City, for Grinker.

Angela Cartmill, Atty. General's Office, New York City, for Perales.

## OPINION

KIMBA M. WOOD, District Judge.

This court previously issued an order granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment. This opinion states the reasons for that order.

## BACKGROUND

The named plaintiff represents a class consisting of recipients of Aid to Families with Dependent Children ("AFDC"), on whose behalf the state collects child support payments. Defendant Louis W. Sullivan, M.D. is the Secretary of the United States Department of Health and Human Services; defendant William J. Grinker is the Commissioner of the New York City Human Resources Administration and represents the class of all commissioners of New York State social services districts; and defendant Cesar A. Perales is the Commissioner of the New York State Department of Social Services.

The AFDC program encourages the care of dependent children in their own homes or in the homes of relatives by helping parents or relatives to become financially able to provide for those children. *See* 42 U.S.C. § 601. The program is a federal-state cooperative effort. In 1984, the program was altered by the Deficit Reduction Act of 1984 (DEFRA), Pub.L. 98–369, 98 Stat. 494. From that point until amended, effective January 1, 1989, 42 U.S.C. § 657(b)(1) provided:

[T]he first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month[.]

Viewed on its own, this amendment had the effect of increasing many families' total income, but viewed from a broader perspective, it was a slight, legislative *quid pro quo* for certain other features of DEFRA, which had "the practical effect [ ] that many families' total income was reduced." *Bowen v. Gilliard,* 483 U.S. 587, 594, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987).

Section 657(b)(1) is referred to as a "pass-through" provision. Prior to the enactment of this section, all child support payments to AFDC recipients were assigned to the state or local government entity distributing AFDC benefits, as a condition of eligibility for those benefits. The pass-through provision altered the statutory scheme so that, although all child support payments still went first to the state or local entity, a certain portion of a parent's monthly child support payments would (in effect) be turned back to the child, and would not diminish the AFDC benefits. That is, a certain portion of these payments would "pass through" the government's hands into the hands of the child for whose benefit the payments were made (such payments often are made through a circuitous route—*e.g.,* a payment may occur by means of a garnishment of the parent's wages by the parent's employer who, in turn, remits the payment to the government).

The Secretary of Health and Human Services promulgated a regulation, codified at 45 C.F.R. § 302.51(b)(1), interpreting § 657(b)(1) to require the state to distribute the first $50 of child support collected only when the state or local entity receives that payment in the month in which it is due. That regulation, as it existed from 1984 until 1989, provided:

Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family.... If the amount collected includes payment on the required support obligation for a previous month or months, the family shall only receive the first $50 of the amount which represents the required support obligation for the month in which support was collected.

Defendant Perales in turn promulgated 18 N.Y.C.R.R. § 352.15(a), which in pertinent part mirrored the federal regulation. Each social service district commissioner was bound to follow both regulations. *See* Social Services law (SSL) §§ 20 and 65.[1]

Plaintiffs contend that the federal and state regulations were inconsistent with the statute and thus violated their rights under 42 U.S.C. § 657(b)(1), the Equal Protection Clause of the Fourteenth Amendment, and the Fifth Amendment of the United States Constitution. They seek a declaratory judgment, injunctive relief, and retroactive benefits.[2] Defendants, in con-

1. In practice 45 C.F.R. § 302.51(b)(1) worked as follows: if an absent parent neglected his or her support duty from, for example, October 1, 1984 until December 1986, and if the State at that point collected all the arrears owed for the past 26 months, in addition to current support for December 1986, the AFDC family would receive one $50 dollar pass-through payment for December, and would not receive any payments for any of the delinquent months. Secretary's Br. at 7–8.

2. Plaintiffs concede that Congress has mooted their claim for relief with respect to payments made after January 1, 1989 when it enacted the Family Support Act of 1988, Pub.L. No. 100–485, 102 Stat. 2343 (1988) ("the 1988 Act"). The 1988 Act dealt with a particular kind of "delinquen-

cy"—some support payments were being *made* timely by parents, but were treated as delinquent because they were not *received* timely by the requisite government agency, because of, for example, bureaucratic delay. The 1988 Act provided for pass-through of all support payments that the parent paid when due, whether or not the requisite government agency *received* them on time.

In accordance with the amended statute, on May 15, 1991, the Secretary revised 45 C.F.R. § 302.51(b)(1) to provide:

Of such amounts as are collected periodically which represent monthly support payments, the first $50 of any payments for a month received in that month, *and the first $50 of any payments for each prior month received in*

trast, assert that the regulation is consistent with the statutory scheme, and consequently, that I must defer to their judgment that the regulation is permissible.

## DISCUSSION

### I.

Pursuant to Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citations omitted). Summary judgment is appropriate in this case because the parties neither dispute the material facts, nor argue that issues of material fact preclude deciding this case by summary judgment. Instead, the parties disagree about the legal significance of the undisputed facts.

### II.

■ The Secretary's regulation is rooted in a particular interpretation of § 657(b)(1)'s reference to "the first $50 of such amounts as are collected periodically which represent monthly support payments." According to the Secretary's regulation, this provision allows for a prohibition on multiple pass-throughs in a given month. The central question before this court is whether the Secretary was within his authority in promulgating and enforcing § 302.51(b)(1), the regulation that enforces this prohibition on multiple pass-throughs.

In resolving this question, I follow the framework established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d

---

*that month which were made by the absent parent in the month when due, shall be paid to the family....*
(emphasis added). Under the new regulation it is clear that child support payments that were timely made by the absent parent but were not received until a later month by the support agency will now result in a pass-through to the AFDC family.

---

694 (1984), for reviewing administrative interpretations of Congressional mandates. The *Chevron* Court directed courts to conduct a two-part inquiry when addressing such issues:

> First, always, is the question whether Congress has directly spoken to the precise question at issue.... If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (citations and footnotes omitted). Thus, it is only when Congress has not spoken directly to the matter at hand, that issues of judicial deference to administrative agencies arise, and, even then, the fact that a court finds a statute susceptible to differing interpretations does not require it to terminate its inquiry. Instead, courts should ask whether the agency's interpretation "is permissible," that is, whether the regulation is "manifestly contrary to the statute," *id.*, 467 U.S. at 844, 104 S.Ct. at 2782, or "a reasonable policy choice for the agency to make," *id.*, 467 U.S. at 845, 104 S.Ct. at 2783.

I first note that Congress does not seem to have "directly spoken to the question at issue" in this case—whether one lump sum support payment for multiple months may yield only one $50 pass-through. Nevertheless, I grant summary judgment to plaintiffs because I find the Secretary's interpretation to be contrary to the statute's meaning and intent.[3]

---

**3.** As discussed in the text, I do not defer to the Agency's interpretation because I find it to be inconsistent with Congress' intent and the statutory scheme Congress enacted. I note, however, that two additional reasons counsel against deferring to the administrative interpretation in this case. First, when a dispute involves purely legal questions, rather than issues of policy, courts do not suffer from the relative lack of

The Second Circuit has not addressed § 657(b)(1)'s purpose and meaning, but several other courts have examined the issue thoroughly. The majority, including the First Circuit and the Sixth Circuit, as well as a number of district courts and state courts, have explained why 45 C.F.R. § 302.51(b)(1) impermissibly contradicts § 657(b)(1). *See, e.g., Wilcox v. Ives,* 864 F.2d 915, 918 (1st Cir.1988); *Lawyer v. Valdez,* 763 F.Supp. 1562, 1565 (D.N.M., 1990); *Brown v. Angus,* No. 88–C–787J (D.Utah, May 22, 1989); *Beasley v. Harris,* 671 F.Supp. 911, 919 (D.Conn.1987); *Humble v. Dept. of Pub. Aid,* 116 Ill.Dec. 509, 512, 519 N.E.2d 99, 102, 165 Ill.App.3d 624 (2d Dist.1988). *But see Vanscoter v. Sullivan,* 920 F.2d 1441, 1445 (9th Cir.1990) (Section 302.51(b)(1) entitled to deference, because of statute's ambiguity).

I accept the majority position for the reasons stated in the First Circuit's extensive analysis in *Wilcox.* As the First Circuit explained, the Secretary's interpretation does not comport with the plain language of § 657(b)(1). "A cardinal rule of statutory construction is that words in a statute must be given their plain, ordinarily understood meaning. For the Secretary's position to be valid, 'periodically' would have to be synonymous with 'monthly,' which is contrary to the plain meaning of the word." *Wilcox,* 864 F.2d at 915 (citations omitted). *See also, INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (the "ordinary and obvious meaning of [a statute's] phrase is not to be lightly disregarded."); *Russello v. United States,* 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (in the absence of an express definition, federal courts are compelled to "start with the

assumption that the legislative purpose is expressed by the ordinary meaning of the words used."); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The court also noted that, although the language of 42 U.S.C. § 602(a)(8)(A)(vi) appears to provide some support for the Secretary's view, that section "simply does not address the issue of payments for more than one month being received in a single month," *Wilcox,* 864 F.2d at 918, and, moreover, in other contexts the Secretary has found that section to be entirely consistent with multiple pass-throughs. *Id.* at 919, 922–24.

The *Wilcox* court also found that the Secretary's view conflicted with the purpose of § 657(b)(1) to mitigate the burden of certain amendments to the AFDC program. This view of Congress' purpose is directly supported by the Supreme Court's own characterization of the statutory scheme:

> Because the 1984 amendments forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced. The burden of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level.... Thus, the net effect ... [is that] the reduction would be offset by $50 if that amount was collected from an absent parent.

*Bowen v. Gilliard,* 483 U.S. at 594, 107 S.Ct. at 3013, *quoted in Wilcox,* 864 F.2d at 919. Because the Secretary's interpreta-

---

expertise *Chevron* intended to address. *See New York City Health & Hosp. Corp. v. Perales,* 954 F.2d 854, 861 (2d Cir.1992) (where an issue is a question of law involving statutory construction and analysis of Congressional intent, and the meaning of the statute is clear, an agency interpretation is entitled to less deference). Second, deference in this case would be especially inappropriate because the Department of Health and Human Services has taken a variety of different and inconsistent positions on the availability of multiple pass-throughs under the statute. *See Wilcox v. Ives,* 864 F.2d 915, 922–26 (1st Cir.

1988). As the *Perales* court explained, "even where a statute is ambiguous or silent on a particular question ... where the Secretary's policy is inconsistent with an earlier policy, that inconsistency is ground for rejecting a claim for deference". 954 F.2d at 861. Given the Second Circuit's strong admonition against deference under such circumstances, and in light of the variety of inconsistent positions held by the Secretary, as discussed in *Wilcox,* 864 F.2d at 922–26, deference to the Secretary would be especially inappropriate in this case.

tion results in "the arbitrary denial of the $50 pass-through to many AFDC recipients through no fault of their own," *Wilcox*, 864 F.2d at 920, it sharply conflicts with the Congressional goal of using the pass-through to mitigate the harsh effects of DEFRA. In short, because the Secretary's interpretation conflicts with the language and purpose of § 657(b)(1), I find that defendants' practice and policy of denying multiple pass-throughs violated § 657(b)(1).

### III.

Because the court finds that 45 C.F.R. § 302.51(b) violated the statutory mandate of 42 U.S.C. § 657(b)(1), the plaintiffs' constitutional claims need not be reached.

### IV.

█ Plaintiffs acknowledge that the 1988 amendment to 42 U.S.C. § 657(b)(1) mooted their claim for relief after the effective date of the amendment. As a result, the relief plaintiffs seek is retroactive in nature, covering the period from October 1, 1984 through January 1, 1989. Relying on decisions that hold that the Eleventh Amendment bars payment of funds from the public treasury for retroactive relief, the Secretary and the state defendants contend that the Eleventh Amendment precludes any relief this court might otherwise award to the plaintiffs. I note at the outset that the only court in this circuit to have addressed this issue—the District of Connecticut in *Beasley*, 671 F.Supp. at 921–22—has decided that the Eleventh Amendment does not bar retroactive relief of wrongfully withheld pass-through payments. However, even putting *Beasley* to the side and approaching the issue anew, I arrive at the same conclusion, for the reasons stated below.

The Eleventh Amendment provides that: [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state or Subjects of any Foreign State.

Despite the clear reference to "citizens of another state," it has long been settled that the Eleventh Amendment also bars suits against a state by one of its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Although the Supreme Court has read an exception into the Eleventh Amendment to allow a federal court to order state officials to comply with federal law, even when the required actions produce a direct and substantial impact on the state treasury, *Milliken v. Bradley*, 433 U.S. 267, 289, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment still prohibits retroactive money damages against a state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Secretary cites several pass-through regulation cases in which courts relying on *Edelman v. Jordan* denied retroactive relief to the plaintiffs because of the Eleventh Amendment concerns. *See, e.g., Mosley v. Hairston*, 920 F.2d 409, 417 (6th Cir.1990); *Kenyon v. Sullivan*, 761 F.Supp. 951, 958 (D.R.I.1991); *Brown v. Angus, supra,* No. 88–C–787J, slip op. at 8. But, in each of the cases with Eleventh Amendment implications cited by the Secretary, it was the *state* department of social services that had collected the child support payments and issued the pass-through payments. In this case, it is the New York City Human Resources Administration and other local social services districts that collect support and issue pass-through payments. In New York, unlike many other states, the local social services district, rather than the state, is ultimately responsible for providing public assistance. For this reason, the Second Circuit has found that these local agencies cannot hide behind the cloak of the Eleventh Amendment merely because they receive from the state some portion of their funding for the AFDC program. *Holley v. Lavine*, 605 F.2d 638, 644 (2d Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Indeed, plaintiffs here do not seek monetary relief against the state; instead they ask that the state be ordered to require the defendant class members—the local commissioners—to make payments to plaintiffs. Plaintiffs' Br. at 35, n. 18.

Relying on *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) and *Fernandez v. Chardon*, 681 F.2d 42, 59–60 (1st Cir.1982), *aff'd sub nom Chardon v. Fumero Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), the Secretary contends that the Supreme Court has cast doubt on the viability of *Holley*, if not overruled it completely, by holding that in the absence of prospective relief, the Eleventh Amendment bars relief against a state based solely on past violations of federal law. However, the two cases cited by the Secretary are simply inapposite; neither involves the question of the scope of Eleventh Amendment immunity for county or local defendants. In addition, recent decisions issued subsequent to *Green* and *Fernandez* demonstrate the continuing vitality of *Holley*. *See, e.g., Mosley v. Hairston, supra*, 920 F.2d at 417 ("county defendants are not immunized by the Eleventh Amendment"); *Finkielstain v. Seidel*, 692 F.Supp. 1497, 1501 (S.D.N.Y.1988); *Tambe v. Bowen*, 662 F.Supp. 939, 942 (W.D.N.Y. 1987), *aff'd*, 839 F.2d 108 (2d Cir.1988).

*Tambe v. Bowen*, which was decided after *Chardon* and *Green*, is particularly relevant to the case at bar. *Tambe* was a class action against the Secretary of Health and Human Services, the Commissioner of New York State Department of Social Services, and the Director of a County Department of Social Services. Plaintiffs argued that they were entitled to retroactive payment of AFDC payments wrongfully withheld. "[P]laintiffs [had pointed] out in their brief that they [did] not seek monetary relief against State defendant, but they [asked] that the State defendant be ordered to require the County Department of Social Services to make payments to class members." *Tambe*, 662 F.Supp. at 943. The district court granted summary judgment for plaintiffs, rejected the Eleventh Amendment defense on the strength of *Holley*, and ordered that the County make corrective payments. The decision was appealed and a unanimous panel of the Second Circuit affirmed the district court decision in its entirety. Although the Second Circuit's opinion did not explicitly discuss the Eleventh Amendment issue, it did

state that it was affirming "substantially for the reasons set forth in Judge Telesca's excellent district court opinion." *Tambe*, 839 F.2d at 111. Given *Holley* and its implicit reaffirmation in *Tambe*, the court rejects defendants' Eleventh Amendment defense.

### CONCLUSION

For the reasons set forth above, the court grants summary judgment to the plaintiff and denies the defendants' motion. The time to appeal the granting of plaintiff's motion for summary judgment and the denial of defendants' motion for summary judgment shall run from the date of this opinion.

So ordered.