8 F.3d 948
 Carmen LUYANDO, individually and on behalf of all others
similarly situated, Plaintiff-Appellee,
v.
William J. GRINKER, Donna E. Shalala, Secretary of Health
and Human Services; Cesar A. Perales,
Commissioner of the State of New York
Department of Social Services,
Defendants-Appellants.
 Nos. 1463-1465, Dockets 93-6001, 93-6003, 93-6007.
 United States Court of Appeals,
Second Circuit.
 Argued May 7, 1993.
Decided Nov. 3, 1993.
 
 Timothy J. O'Shaughnessy, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York, Fay Leoussis, of counsel), for defendant-appellant Grinker.
 Susan D. Baird, Sp. Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Ping C. Moy, Asst. U.S. Atty., of counsel), for defendant-appellant Shalala.
 Robert J. Schack, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for defendant-appellant State Com'r.
 Ian F. Feldman, New York City (Marshall Green, Kalman Finkel, Steven Godeski, Legal Aid Soc., for plaintiff-appellee.
 Before: MESKILL, Chief Judge,* PIERCE and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 The plaintiffs challenge a federal regulation that has the effect of limiting so-called "pass-through" payments to plaintiffs from child support payments collected from an absent parent under the Child Support Enforcement Program, Title IV-D of the Social Security Act.
 
 
 2
 The Secretary of Health and Human Services ("Secretary"), the Commissioner of the City of New York Human Resources Administration, and the Commissioner of the State of New York Department of Social Services appeal from a judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, Judge ) invalidating the regulation, 45 C.F.R. § 302.51(b)(1), as an impermissible interpretation of 42 U.S.C. § 657(b)(1).
 
 BACKGROUND
 A. Statutory Framework
 
 3
 Congress designed the Aid to Families with Dependent Children ("AFDC") program, Title IV of the Social Security Act of 1935, to "encourag[e] the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services ... to needy dependent children and the parents or relatives with whom they are living." 42 U.S.C. § 601; see Act of August 14, 1935, Pub.L. No. 74-271, §§ 401-406, 49 Stat. 620, 627-29; see generally Heckler v. Turner, 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138 (1985).
 
 
 4
 AFDC families are required to assign their child support rights to the state in which they live. 42 U.S.C. § 602(a)(26). In the Deficit Reduction Act of 1984, ("DEFRA"), Pub.L. No. 98-369, § 2640, 98 Stat. 494, 1145-46, Congress enacted 42 U.S.C. § 657(b)(1), which provided that the first $50 of child support payments collected by the state be given to AFDC families without being counted as income for purposes of AFDC eligibility. The $50 is, in effect, "passed through" the hands of the state government to the AFDC family, and is thus commonly called a "pass through." From October 1, 1984 until it was amended on January 1, 1989, the statute provided that:
 
 
 5
 the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month.
 
 
 6
 42 U.S.C. § 657(b)(1) (1984).
 
 
 7
 The plaintiffs challenge 45 C.F.R. § 302.51(b)(1), promulgated by the Secretary, which, from October 1, 1984 until May 15, 1991, provided in relevant part:
 
 
 8
 Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family.... If the amount collected includes payment on the required support obligation for a previous month or months, the family shall only receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected.... No payment shall be made to a family under this paragraph for a month in which there is no child support collection.
 
 
 9
 45 C.F.R. § 302.51(b)(1). Under the regulation, the family received the $50 pass-through only if the state received the payment in the month it was due. Defendant Perales promulgated N.Y.Comp.R. & Regs. tit. 18, § 352.15(a) (1986) which mirrored the federal pass-through regulation.
 
 
 10
 Plaintiffs concede that their claim is limited to payments made prior to January 1, 1989 since, in the Family Support Act of 1988, Congress amended § 657(b)(1) to provide that families receive pass-throughs only for support payments that the parent paid when due. Pub.L. No. 100-485 § 102(b), 102 Stat. 2343, 2346 (1988).
 
 B. Facts and Prior Proceedings
 
 11
 Plaintiff-appellee Carmen Luyando, a mother of three minor children who receives public assistance benefits under AFDC, filed a complaint on August 11, 1987 challenging § 302.51(b)(1) insofar as it prohibited Luyando and those similarly situated from receiving pass-throughs when support payments were not actually received by a social services agency in the month due. On January 12, 1989, the district court certified a plaintiff class consisting of all persons residing in New York State who receive AFDC and, since October 1984, have assigned their rights to receive child support. The district court also certified a defendant class of all county Social Services Commissioners in New York State.
 
 
 12
 Both parties filed motions for summary judgment. On April 15, 1992, the district court granted the plaintiffs' motion and denied the defendants'. In a careful and thorough opinion issued November 3, 1992, the district court held that § 302.51(b)(1) conflicts with the language and purpose of § 657(b)(1). Luyando v. Sullivan, 808 F.Supp. 283, 288 (S.D.N.Y.1992).
 
 
 13
 This appeal followed.
 
 DISCUSSION
 
 14
 We review the district court's grant of summary judgment to determine whether a genuine issue of material fact exists and whether the law was applied correctly below. National Union Fire Ins. Co. v. Turtur, 892 F.2d 199, 203 (2d Cir.1989). This case contains no relevant factual disputes and presents only a legal issue of statutory interpretation. The question at issue is whether the Secretary was within her authority to promulgate and enforce § 302.51(b)(1), which interprets 42 U.S.C. § 657(b)(1) to prohibit $50 pass-throughs for child-support payments not received in the month due.
 
 A. Statutory Language
 
 15
 We generally look first to the plain language of a statute and interpret it by its ordinary, common meaning. Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). If Congress's intent is clear, we need not look further. Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). During the relevant period, § 657(b)(1) stated in part:
 
 
 16
 [T]he first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance....
 
 
 17
 We agree with the district court below and the Ninth Circuit in Vanscoter v. Sullivan, 920 F.2d 1441, 1445 (9th Cir.1990) that the language of the statute is ambiguous. We cannot discern from the plain language whether "Congress intended recipients to receive a $50 pass-through payment for every monthly child support payment collected in a particular month, or to limit pass-through payments to monthly support payments collected in the month they were due." Vanscoter, 920 F.2d at 1445. We note that the First Circuit reached the contrary conclusion that the language was unambiguous in invalidating the Secretary's regulation. Wilcox v. Ives, 864 F.2d 915, 917 (1st Cir.1988) ("For the Secretary's position to be valid, 'periodically' would have to be synonymous with 'monthly' which is contrary to the plain meaning of the word."). However, it seems to us that the statute yields two contrary and equally plausible readings. The first would require states to pass-through the first $50 of each lump payment, however many monthly payments that amount represents; the second would require states to pay $50 from each amount that equals a monthly payment even if not paid in the month due.
 
 
 18
 The defendants argue that even if we find that § 657(b)(1) is ambiguous when read alone, examining it in the context of other sections passed at the same time reveals that its plain meaning is consistent with the challenged regulation. The defendants specifically point us to 42 U.S.C. § 602(a)(8)(A)(vi), which, during the relevant period, required states to "disregard the first $50 of any child support payments received in such month ... (including support payments collected and paid to the family under section 657(b) of this title)," when recomputing the family's AFDC eligibility. Based on this provision, the Secretary argues that pass-throughs of more than $50 to a family in a given month would not be disregarded, and would instead be counted as income when calculating the family's AFDC eligibility and benefit level. However, § 657(b)(1) contained its own disregard provision: it provides that the $50 pass-through shall be paid "without affecting [the family's] eligibility for assistance or decreasing any amount otherwise payable as assistance to such family." 42 U.S.C. § 657(b)(1). Therefore, § 602(a)(8)(A)(vi) does not resolve the issue.
 
 
 19
 The Secretary also contends that we should read § 657(b)(1) with other subparts of § 657(b), subsections (b)(2), (b)(3), and (b)(4). While these subparts set forth a hierarchy for the distribution of payments, see Vanscoter, 920 F.2d at 1445-46, they do not shed any light on whether Congress intended to allow or prohibit multiple pass-throughs in a given month.
 
 
 20
 We agree with the Ninth Circuit that reading § 657(b)(1) with related provisions neither clarifies the ambiguity in § 657(b)(1), nor renders the Secretary's interpretation impermissible. Vanscoter, 920 F.2d at 1445.
 
 B. Congressional Intent
 
 21
 The legislative history materials for DEFRA do not explicitly refer to the pass-through program, and thus, the purposes of the program must be gleaned from the purposes of the DEFRA. While there is mention of the pass-through program in the legislative history of the Family Support Act which amended § 657(b)(1), the Senate Committee specifically stated that no inference should be drawn from the amendment as to the correct interpretation of the pre-amendment law. S.Rep. No. 377, 100th Cong., 2d Sess. 17 (1988), reprinted in 1988 U.S.C.C.A.N. 2776, 2794.
 
 
 22
 The plaintiffs argue that the purpose of the program was to mitigate the harsh effects on poor families of DEFRA and thus, even if the statutory language is considered ambiguous, the Secretary's interpretation violated this purpose. DEFRA did have the effect of reducing AFDC payments for many families. However, as the Supreme Court stated in Bowen v. Gilliard, 483 U.S. 587, 594, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987), the DEFRA burdens were "mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level.... Thus, the net effect ... [is that] the reduction would be offset by $50 if that amount was collected from an absent parent." The plaintiffs argue that this mitigating effect was significantly reduced if any tardiness, by an employer, a government agency, or the noncustodial parent, prevented the family from receiving the $50 pass-through.
 
 
 23
 While the plaintiffs' argument is not without force and was persuasive to the very able district judge, see 808 F.Supp. at 287-88, we note that mitigating the harsh effects of DEFRA was not the sole purpose for the pass-through program. The Ninth Circuit listed four goals of the pass-through: "(1) to provide an incentive for AFDC recipients to cooperate with support enforcement; (2) to provide an incentive for absent parents to make regular and timely support payments; (3) to provide supplemental income to needy families; and (4) to reduce governmental spending and the federal deficit." Vanscoter, 920 F.2d at 1446; see also 42 U.S.C. § 651 (listing the multiple general goals of the child support legislation); 1974 U.S.C.C.A.N. 8133, 8146 (same); Sullivan v. Stroop, 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (one purpose of DEFRA amendments is to "encourage the making of child support payments by absent parents"). When considering the multiple goals of the pass-through program, neither the plaintiffs' interpretation nor the Secretary's interpretation runs afoul of these purposes. See Vanscoter, 920 F.2d at 1441 (explaining that the statutory goals are served regardless of whose interpretation of the statute is adopted).
 
 C. Deference to Agency
 
 24
 When Congress's intent is ambiguous, we normally confer agency interpretations considerable deference. The Supreme Court has held that where an agency's interpretation is a permissible construction of the statute, we may not substitute our own construction. Chevron, 467 U.S. at 844-45, 104 S.Ct. at 2782-83.
 
 
 25
 The plaintiffs argue that we should give the Secretary less deference, however, because the agency's interpretation significantly departs from previous interpretations. The plaintiffs focus on the difference between the proposed version of § 302.51(a) and the interim final rule. Section 302.51(a) defines the date at which child support payments are deemed to have been collected. The proposed version of that rule defined the date of collection as the date "payment is received by the IV-D agency of the State in which collection is made" or the "date the employer withholds the wages to meet the support obligation." 49 Fed.Reg. 36797 (1984). However, the interim final rule defined the date of collection as the date on which the local collecting agency received the payment in the state in which the AFDC recipients live. 50 Fed.Reg. 19648 (1985). This rule precluded pass-throughs to AFDC families where the parent's employer failed to withhold the parent's wages in a timely manner or where the parent lived in a different state than the children and the state agency in the parent's state forwarded the payment to the state agency in the children's state after the month in which it was due. The Secretary subsequently promulgated a final version of § 302.51(a) in which the date of collection was redefined as the date the payments are received by any collecting agency (in-state or out-of-state) in the month due. 53 Fed.Reg. 21642 (1988). Plaintiffs argue that the Secretary's change in position vis-a-vis § 302.51(a) requires the court to give her interpretation of § 657(b)(1) less deference. See New York v. Sullivan, 889 F.2d 401, 409 (2d Cir.1989), aff'd sub nom. Rust v. Sullivan, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). The First Circuit and the district court below agreed. Wilcox, 864 F.2d at 925.
 
 
 26
 However, we think that the Secretary's position regarding § 302.51(a) is unrelated to whether § 302.51(b)(1) deserves deference. Section 302.51(b)(1) has not changed since its initial promulgation and the Secretary has remained consistent that its construction of § 657(b)(1) permits pass-throughs only when child-support payments are timely made. We agree fully with the Ninth Circuit's analysis that the changes in definition in receipt and collection pursuant to § 302.51(a) "do not concern the ultimate question whether the statute entitles recipients to multiple pass-throughs for delinquent child support payments." See Vanscoter, 920 F.2d at 1447.
 
 
 27
 While § 302.51(a) did affect the administration of the pass-through program by designating when payments were considered timely for purposes of § 302.51(b)(1), § 302.51(a) affected other issues as well. For example, § 302.51(a) established the date of collection of support for purposes of counting income in AFDC eligibility redetermination as well. 45 C.F.R. § 232.20(b)(1). Consequently, we think that the Secretary's changes regarding § 302.51(a) does not detract from the deference that we must otherwise show to § 302.51(b)(1).
 
 
 28
 Considering § 302.51(b)(1) on its own, we see no reason why the Secretary's interpretation of § 657(b)(1) should not be accorded substantial deference. We agree with Judge Breyer's statement in his concurring opinion in Wilcox that "[i]n a case like this one, where the statutory provision is minor and interstitial, where the agency has a firm understanding of the relationship of that provision to other, more important, provisions of the statute, and where that understanding grows out of both the agency's daily experience in administering its statute and its familiarity with the initial legislative drafting process, the Secretary's argument has considerable 'power to persuade.' " 864 F.2d at 926-27 (Breyer, J., concurring) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).
 
 
 29
 We conclude that § 657(b)(1), prior to its 1988 amendment, was susceptible to various interpretations. We agree with the able district judge that the implementation of § 302.51(b)(1) was troubling in some cases since it resulted in a denial of the $50 pass-through to AFDC recipients through no fault of their own. See Luyando, 808 F.Supp. at 288; Wilcox, 864 F.2d at 920. But, while we can easily see how the Secretary might have reasonably chosen to interpret the statute to permit pass-throughs for months in which payments were not received in order to mitigate hardship, we cannot say that such an interpretation was compelled or that the Secretary's contrary interpretation as embodied in § 302.51(b)(1) was an impermissible, and hence invalid, construction of the statute. Chevron, 467 U.S. at 842-44, 104 S.Ct. at 2781-82.
 
 
 30
 Because we find that § 302.51(b)(1) did not violate the statutory mandate of § 657(b)(1), we need not reach the defendants' other arguments.
 
 CONCLUSION
 
 31
 We reverse the decision of the district court.
 
 
 
 *
 After argument but before decision, Chief Judge Meskill became a Senior Circuit Judge